GUSTAV ECKHARDT et al., Appellants, v. BANKERS TRUST
COMPANY et al., Appellees.

No. 43810.

MAY 11, 1937.

Chester J. Eller, for appellants.

Gamble, Read & Howland and Cook & Balluff, for appellees.

ANDERSON, J.—This suit was originally brought by Gustav
Eckhardt and his wife, Emma. Subsequently the other plain-
tiffs were joined in the case although they are in no way neces-
sary or proper parties to the disposition of the matters in con-
troversy.

The record presents little other than questions of fact, and
it has been arduous to get a fair picture of the material facts
and circumstances surrounding the transactions of which plain-
tiffs complain. No comprehensive or informative statement of
facts is contained in the appellants' briefs and arguments, and
the statement of facts as made by appellees, while lengthy and
comprehensive, is strenuously denied by appellants, and it has
been necessary for us to resort to and carefully read 400 pages
of transcript of the evidence.

Appellants' case is based upon fraud and misrepresentation and it will be impracticable, within the reasonable limits of an opinion, to refer in detail to all of the testimony which it is claimed established the alleged fraud and misrepresentation contended for by appellants, or which denies and refutes the existence of such fraud and misrepresentations as contended by the appellees.

We will attempt to detail the various occurrences and transactions material to a disposition of the appeal in the order in which they occurred:

On July 8, 1930, one J. A. Heim, who was at that time a son-in-law of the plaintiff, Gustav Eckhardt, but since divorced, entered into a contract of purchase with the defendant bank under the terms of which he purchased the interest of the defendant bank in a coal mine near the city of Des Moines, including mining equipment, leases and appurtenances. The mine was known at that time as the "Rider mine", and the consideration for the purchase was $25,000, and this consideration was paid with the personal note of Heim. This contract was on the 20th day of November, 1930, assigned by Heim to his father-in-law, Gustav Eckhardt, the principal plaintiff herein. It conclusively appears that Eckhardt had nothing whatever to do with the purchase of the mine by his son-in-law, Heim; that he was not considered or mentioned in the negotiations prior to the purchase and was not consulted in any way until some time after the purchase was completed.

On July 15, 1930, Eckhardt and Heim entered into a written agreement relative to the use of 250 shares of stock in the Davenport Bag & Paper Company as collateral security, Eckhardt being the owner of the paper company. This agreement provided that Heim would assign and set over to Eckhardt all of the stock issued to him by the corporation that was then in the formative period, and the agreement further provided that Heim might hypothecate the stock for a loan of $10,000 at any bank, other than two named banks in Davenport, Iowa.

On July 22, 1930, Eckhardt executed his note to the defendant bank for $10,000 collaterally secured by the assignment of the 250 shares of stock in the paper company. Upon the execution of this note a draft for $10,000 was issued by the defendant bank and delivered to Gustav Eckhardt, and by him indorsed and made payable to J. A. Heim. This draft was in-

dorsed by Heim to the coal company, which was then operated under the name of Rider-Heim Coal Company, and deposited in its account with the defendant bank and later checked out by the coal company and used in the operation of the mine.

On August 20, 1930, articles of incorporation of the Rider-Heim Coal Company were filed in the office of the Secretary of State of Iowa, executed by J. A. Heim, Gustav Eckhardt and Ed Bucknell as incorporators, and these articles provided for the issuance of stock to the amount of $100,000, and also provided that the temporary officers of the corporation should be J. A. Heim, president and treasurer, Gustav Eckhardt, vice-president and secretary. A certificate was issued by the Secretary of State authorizing the corporation to engage in business. Gustav Eckhardt was later elected secretary and treasurer of the corporation and continued to act as such.

On August 31, 1931, the incorporated company made application to the Executive Council of the State of Iowa for permission to issue stock against the physical assets of the company. This application was prepared and submitted to the Executive Council by an attorney representing the corporation. The Executive Council, after having the property of the coal company appraised, found its reproduction value to be $150,000, and with values properly depreciated the mining property with its equipment and appurtenances to be worth $129,807, and issued its permit that the company be authorized to issue stock in the amount of $75,000.

On November 10, 1930, Eckhardt and Heim executed and delivered to the defendant bank their joint note for $2,500, which amount was passed to the credit of the coal company and was used for the purchase of equipment and machinery in further developing the mine.

On November 26, 1930, Eckhardt and Heim executed to the bank their note for $39,000. This note being in settlement and renewal of the $10,000 note, the $25,000 note, and the $2,500 note with accrued interest, and a balance of $827 remaining after the payment of the prior obligations was placed to the credit of the Rider-Heim Coal Company. This transaction occurred on the same day that the original contract for the purchase of the mine was assigned by Heim to Eckhardt.

On May 11, 1931, Eckhardt, Heim and three others who had become stockholders in the Rider-Heim Company Corpora-

tion joined in the execution of a renewal of the $39,000 note, above mentioned.

On June 8, 1931, a payment of $5,000 was made on the $39,000 note. The sum thus paid having been realized from the sale of stock by Eckhardt in the coal corporation.

On July 24, 1931, Eckhardt, Heim and three other stockholders executed and delivered to the defendant bank a sureties agreement in which they obligated themselves to pay any indebtedness due the defendant bank of the coal company then existing or to be created thereafter not however exceeding the sum of $16,000.

On August 14, 1931, the directors of the coal company held a meeting in Des Moines over the affairs of the company and Eckhardt, Heim and three other stockholders made a renewal note to the defendant bank for $34,000, and this renewal note is one of the items declared upon by the defendant bank in its cross-petition in this case.

On August 21, 1931, another corporation was formed by Eckhardt, Heim and one Ed Bucknell, as incorporators, under the name of Rider-Heim Sales Corporation. And the evident purpose of this corporation was to handle the sales department of the original coal corporation.

On September 23 and 25, 1931, conferences were had between Eckhardt and a Mr. Kauffman, who was an officer of the defendant bank, relative to the advancement by the bank of additional money to the coal company to enable it to meet a pay roll, and there was talk at that time as to the execution of a trust agreement by Eckhardt to the bank. Additional money was advanced at that time to meet the pay roll in question, and later in the month of September an employee of the defendant bank went to Davenport, the home of Eckhardt and Heim, and talked about a proposed trust agreement with Eckhardt and his wife, and later and on October 8, 1931, the bank employee took the completed draft of the trust agreement to the home of Eckhardt in Davenport where it was executed by Eckhardt and his wife and a copy of it delivered to Mr. Eckhardt either on the day of its execution or within a day or so thereafter.

On October 10, 1931, the coal company executed a note to the defendant bank, a part of which was a renewal, for $14,344, and this latter note is declared upon by the defendant bank in its cross-petition with a prayer for judgment for the amount due

thereon against Eckhardt on account of his agreement of guarantee or "sureties agreement".

An attempt was made later by the bank to obtain a renewal of the past due $34,000 note, but Eckhardt was unable to induce the co-makers to execute the renewal, and on March 31, 1932, an action was instituted by the defendant bank in the district court of Polk County against all the persons who signed the "sureties agreement". This case was later dismissed, at least as to Mr. Eckhardt. And in August, 1932, the case at bar was commenced by Eckhardt and his wife in the district court of Scott County to cancel as to Eckhardt all of his obligations to the defendant bank, including the sureties agreement and the trust agreement. The trust agreement pledged an undivided one-half interest in certain real estate in the city of Davenport as security for the payment of any indebtedness of Eckhardt to the defendant bank due, or to become due, existing or to be created in the future.

It is claimed on the part of appellants that the entire transactions, as detailed above, were a part of an original conspiracy on the part of the defendant bank, its officers, and J. A. Heim to defraud appellant, Eckhardt, but the record is absolutely barren in its support of any such contention. Most, if not all, of appellants' testimony as to any misrepresentations or fraud shows that the claimed misrepresentations and fraudulent statements were made by one Edenburn, an employee of the defendant bank, on July 22, 1930, when the $10,000 note was signed by Eckhardt and the stock in the paper company pledged as collateral thereto. This testimony was that of Eckhardt, his wife and his daughter, Mrs. Heim. These witnesses testified that on that date Edenburn represented to Eckhardt that the mine was a valuable property, a going concern, making money, and with wonderful opportunities for the future. This testimony was flatly denied by Edenburn, and he further testified that at that time he knew very little about the mine in question and that its value and possibilities were not the subject of any conversation had by him with the Eckhardts. In this connection it should be noted that at least a week prior to the time of this meeting and the signing of the $10,000 note, Eckhardt had entered into a written agreement with his son-in-law, Heim, agreeing to hypothecate 250 shares of stock in the paper company to secure a loan of $10,000, and that agreement provided that the loan might be secured from any bank other than two named banks in the city of Davenport.

It should further be noted that attempts were made to borrow this money through sources other than the defendant bank which were unsuccessful, and that thereafter Heim negotiated the loan with the defendant bank. This transaction had nothing to do whatever with the purchase or sale of the coal mine. That transaction had already been consummated on July 8, 1930. Neither was any part of the $10,000 which was loaned by the bank upon this note applied to the purchase of the mine. The same situation existed as to the second note of $2,500 executed November 10, 1930, by Eckhardt and Heim, the proceeds of which were used in the purchase of machinery and equipment. These were but ordinary business transactions and certainly cannot be claimed to have created any fiduciary relationship between the defendant bank and the Eckhardts. The appellants claim that a fiduciary relationship existed as between the bank and the Eckhardts from the day of the loaning of the first $10,000 and that thereafter Eckhardt did not deal with the defendant bank at arms length, but as a friend, trustee, and protector. This contention finds no support in the record and is without merit.

On November 26, 1930, Eckhardt and Heim executed to the defendant bank their joint note for $39,000 covering the $10,000 note first mentioned, the $2,500 note involved in the second transaction, and the original note of Heim for the purchase of the mine of $25,000, and the balance of the $39,000 note amounting to something over $800 was passed to the checking account of the incorporated coal company in which Eckhardt owned all capital stock, except a few qualifying shares issued to Heim and other officers of the company.

The trust agreement which was executed on the 7th of October, 1931, was in fact a mortgage upon certain property owned by Eckhardt in the city of Davenport and most of its contents pertained to the indebtedness of Eckhardt to the defendant bank. It provides that ''all indebtedness of grantors, or either of them, now existing, renewals thereof, all indebtedness hereafter created, to the Bankers Trust Company, shall be and remain a first lien on said property, and the income therefrom, until all such indebtedness, both principal and interest, has been paid in full.'' It further provides that the defendant bank shall receive an assignment of all existing leases and shall have authority to lease, demand and collect rents and profits from the pledged real estate, and further that in the event any obligation of the Eck-

hardts to the defendant bank becomes delinquent the defendant bank might sell the mortgaged property or in any other manner make the amount of Eckhardt's indebtedness to the bank therefrom.

The trust agreement further provides that after the payment of the obligations due the defendant bank from the Eckhardts that the balance of the property remaining, if any, shall, after the death of Gustav Eckhardt and his wife, be distributed in equal shares to Oscar Eckhardt and Hertha Eckhardt Heim.

It is contended by appellants that the trust agreement was executed through a misunderstanding as to its contents and effect; that they did not know or understand its provisions or import; and that they were influenced by the prior false and fraudulent statements and misrepresentations; that they did not understand that the agreement created a lien upon the real estate securing the indebtedness to the defendant bank; that they relied upon the business integrity and friendship of Mr. Kauffman, an officer of the bank, and upon the prior statements made to them by Edenburn as to the value and condition of the coal mine. The appellants further claim that they did not read the trust agreement and did not submit it to anyone for advice. It appears that they had a duplicate copy of the agreement, either on the day it was executed or a day or two later; and that they were immediately advised by a Mr. Noth and their son, Oscar, that they had deeded away or conveyed, or mortgaged all of their title and interest in the Davenport property, yet they made no complaint and sought no relief until August, 1932, when they commenced the present action. This was long after the maturity of Eckhardt's indebtedness to the bank, and after the coal company had been thrown into bankruptcy, and after the defendant bank had commenced an action in Polk County district court upon a part of Eckhardt's indebtedness.

We cannot conclude from the record that the statements claimed to have been false and made by Edenburn at the time of the execution of the $10,000 note were in fact made by him. The testimony of the appellants in this regard is evasive and not at all convincing as to its truth. There is also no record evidence that Kauffman, the officer of the defendant bank, made any of these statements, or similar statements or misrepresentations, or that his representative, Edenburn, was directed by him to make such statements, or that he, Kauffman, knew that either Eden-

burn or Heim ever made any statements to the appellants that were false and misleading or were made for the purpose of defrauding the appellants. At the time the alleged statements were made by Edenburn there was no reason or purpose in making them. At that time Eckhardt had agreed, in writing, with his son-in-law to aid in securing a loan of $10,000. Eckhardt at that time owned the mine and was interested in attempting to operate it as a business proposition successfully. Eckhardt testifies that Mr. Kauffman told him, right in his office, what a wonderful thing the mine was and how much money could be made out of it. This testimony is denied by Kauffman, and it must be remembered that at the time of the execution of the first $10,000 note Eckhardt had never seen Kauffman and did not know him, and that he had never seen or heard of Edenburn until the day the $10,000 note was executed.

It must be borne in mind that fraud is never presumed, and that the burden is upon plaintiffs to establish fraud by clear, convincing, and satisfactory evidence. Kilts v. Read, 216 Iowa 356, 249 N. W. 157; Johnson v. Tyler, 175 Iowa 723, 157 N. W. 184; Tapper v. Washington Refining Company, 192 Iowa 253, 181 N. W. 664.

We conclude that there is an utter failure of proof that the appellants relied on anything that Edenburn said to them at the time the $10,000 note was executed. Edenburn would have no purpose at that time in making the statements attributed to him or any other statements for the reason that he was in Davenport calling upon the Eckhardts for the sole purpose of obtaining Eckhardt's signature to the $10,000 note and the certificate of stock as collateral security, in furtherance of prior arrangements made between Eckhardt and his son-in-law, Heim, and between Heim and the defendant bank. And in this connection it may be commented that there is no evidence in the record from which it could be concluded that the statements and representations claimed to have been made by Edenburn or Kauffman were false and untrue. There is some evidence that prior ownership of the coal mine had been unsuccessful in its operation, but the officers of the Rider-Heim Coal Company when they made application to the Executive Council for the issuance of stock claimed and asserted that the property was of the value of $241,788, and the Executive Council found it to be worth in excess of $129,000 and permitted the issuance of stock as against the property to.

the amount of $75,000. It may also be noted that $10,000 in cash was advanced by the bank to the coal company upon the appellants' note and later additional sums were so advanced upon other notes all of which advancements by the defendant bank were placed to the credit of the coal company and used by it.

Contracts between parties relating to purely business transactions are not to be treated lightly or set aside by the courts unless there is such clear and satisfactory showing of fraud or misrepresentation as will call for the interference of a court. The law raises the presumption that every transaction is free from fraud, and the burden is upon the party charging fraud to furnish proof clear, satisfactory, and convincing to overcome such presumption. Tapper v. Washington Refining Company, supra.

At the time of the execution of the trust agreement Eckhardt's obligations to the bank were past due and he secured the extension of the time of payment of such obligations, as well as some additional advances, by the execution of the trust agreement. This furnished a valid and ample consideration for the execution of such agreement.

Another reason given by the Eckhardts as an inducing cause for the execution by them of the trust agreement is that Edenburn told them, and they believed, that the defendant bank could not sue them upon their obligations due the bank if they would execute the trust agreement, and that in any event Eckhardt could only be held liable on the obligations to the extent of one-fifth thereof because they were signed by four other officers and directors of the coal company. This testimony is so unreasonable in the light of the fact that Eckhardt himself was an experienced business man and had signed notes, made loans, and transacted other similar business deals, and he must have known from and through his business experience that such statements, if made by Edenburn, were untrue. It must be kept in mind that the only representations claimed to have been made as to the value or condition of the mine as a business proposition were made at the time of the execution of the $10,000 note, and that prior to that date Eckhardt had become one of the incorporators, an officer, and the principal stock holder in the corporation known as the Rider-Heim Coal Company. And it appears clear that during all of the time until the final end of the transactions

480

herein detailed that Eckhardt, together with his associates, was making strenuous efforts to continue the business of the coal company, and that not until such efforts failed did Eckhardt conclude that he had suffered a wrong by reason of the acts and statements of the defendant bank.

Without further extending this opinion, it is our conclusion that the appellants failed to meet the burden of proving the allegations of their pleadings and have failed to show themselves entitled to the relief demanded, or any relief.

The trial court having the witnesses before it and having the advantage of noting their demeanor and conduct on the witness stand made a finding and decree in accordance with the foregoing opinion. The judgment of the trial court on the questions of fact should receive, and does receive, large consideration by the appellate court in review. The trial court found further for the defendant on the cross-petition upon the obligations declared upon by it, established a lien upon the collateral security held by the defendant bank, and established and foreclosed the lien created by the trust agreement and entered judgment in the total sum of $58,900, with interest and costs. With this finding, judgment and decree of the trial court we are in accord and an affirmance necessarily follows.—Affirmed.

RICHARDS, C. J., and MITCHELL, PARSONS, SAGER, STIGER, KINTZINGER, and HAMILTON, JJ., concur.