ILSEGRET ELIZABETH NISSEN, appellant, v. NISSEN TRAMPOLINE COMPANY, appellee.

No. 47471.

(Reported in 39 N.W. 2d 92)

476

September 20, 1949.

Rehearing Denied February 10, 1950.

Jordan & Jordan and M. W. O'Rieley, all of Cedar Rapids, for appellant.

B. D. Silliman, of Cedar Rapids, for appellee.

WENNERSTRUM, J.—Plaintiff sought in her action to have declared void and thereby set aside three deeds to properties in which she previously had an interest. These deeds had transferred her interest in certain properties to defendant-corporation of which plaintiff's former husband was president and majority stockholder. The trial court held that the defendant-corporation was not guilty of any fraud and dismissed plaintiff's petition. She has appealed.

The appellant, Ilsegret Elizabeth Nissen, and George Peter Nissen were husband and wife at the time of the signing of the deeds. They were married March 31, 1940, and were divorced March 24, 1947. The three properties were acquired by George P. Nissen during the period of the marriage either through gift or purchase. The title to one of the properties was taken in his name and the other two properties had been held by him and his wife as joint tenants. Nissen's father, now deceased, had been in the real estate business and had assisted in the purchase of the

properties. The one held in the name of George P. Nissen constituted the home of appellant and her husband. The properties were used to a certain extent in connection with the manufacture of the corporation's product and according to the minutes of the corporation were rented by it. The appellant contributed nothing to the purchase of the properties although it is her contention that she assisted in the earnings of her husband through their joint efforts in the exhibitions hereafter mentioned.

The action to set aside the deeds to the corporation was originally brought against George P. Nissen, and the Nissen Trampoline Company. However, the appellant dismissed the action as against Nissen prior to the trial.

The appellee, Nissen Trampoline Company, was organized as a corporation in June 1946. Its purpose is to manufacture and sell athletic equipment and its particular product is an apparatus consisting of supports to which springs are attached which in turn hold a tight canvas. By means of the springs and canvas greater resiliency is obtained in athletic tumbling exhibitions. The appellant and George P. Nissen made use of this apparatus in presenting tumbling acts throughout the country during the war and afterwards.

Nissen has been president of the corporation since its organization and was so acting at the time of the signing of the deeds. The appellant was secretary until January 23, 1947. The minutes of the corporation show that on that date she was removed as secretary and an office employee was named in her place. It is the appellant's claim that at the time she signed the deeds, which will be commented upon more particularly later, she had not been informed she was no longer secretary of the corporation. She had made no financial contribution to the corporation and owned no stock in it.

It is also shown by the minutes of the corporation that on December 17, 1946, its board of directors passed resolutions which provided in part that it should purchase from George P. Nissen the properties rented by the corporation from him at a valuation to be later determined. It was further provided that pending the completion of the transfer of these properties the corporation would lend money to George P. Nissen in an amount not to exceed $15,000 which loan was to be secured by a lien

upon his stock until such time as the transaction was finally completed. Thereafter the corporation lent George P. Nissen $2500 and $7005.49 on January 10, 1947, and the further sum of $10,000 on February 26, 1947. The total amount of the three loans aggregates $19,505.49.

It is appellant's contention that on or about March 1, 1947, she signed certain blank instruments which were presented to her by George P. Nissen, it being explained to her by him that they were papers in connection with the operation of the corporation. It is developed by the evidence that on or about March 4th the corporation received from Nissen three separate warranty deeds covering the three properties here involved. These deeds were signed by George P. Nissen and the appellant and are dated March 4, 1947. They bear a notarial acknowledgment by the grantors. These properties were unencumbered and the evidence shows that they had a valuation in excess of the amount lent by the corporation to George P. Nissen. One of the properties has since been sold. The purchaser was not made a defendant in the action brought by the appellant.

The appellant asserts that fraud was committed against her by the corporation acting through her then husband in the obtaining of the deeds from her on March 1, 1947, in that her husband represented to her that the deeds were papers which required her signature as an officer of the defendant-corporation. She learned of the fact that the papers she had signed were deeds conveying the properties to the corporation on or about March 16 or 17, 1947. On or about March 17th or 18th she conferred with her husband concerning the claimed fraud and it is her testimony that he admitted it and promised to pay her money to satisfy any claim she might have. She agreed to this arrangement. In connection with her divorce action she signed a stipulation on March 24, 1947, which was incorporated into the decree of divorce and which in part provided: "This stipulation shall constitute a final settlement between the parties."

The appellant in her testimony stated that she signed the deeds on March 1, 1947, at a time when she understood she was still secretary of the company. She stated that when she signed the papers there was no typing on them, only the printed form and that Nissen did not sign them at the time she did. Ac-

cording to her testimony the deeds were signed at her mother's residence and when her mother was a short distance away and in plain sight of her. The mother testified she heard her former son-in-law say to her daughter, "I want you to sign these papers for the company", to which statement the daughter made inquiry, "Well, what am I signing?" Nissen then, according to appellant's mother, said, "Oh, something for the company." The daughter, according to the testimony of the mother, then signed two papers and again asked Nissen what they were and he replied, "Oh, I will explain later, I am in a hurry." According to the testimony of the mother the appellant signed four papers. There is evidence to the effect that on March 1st, the date appellant claims the deeds were signed, she was in a hurry to leave as her husband was taking her to the interurban for a trip to Iowa City where the appellant and Nissen were to give an exhibition that evening.

George P. Nissen testified for the appellee that he never asked his former wife to sign any blank papers at any time and that the legal descriptions contained in the deeds were on them before either party signed them. He further testified:

"I understood that these deeds were signed on the 4th of March and so dated and I believe * · * * it was a Tuesday, and I remember because I was in the car with Ilsegret and with my mother and we stopped and my mother got off at the Women's Club. Ilsegret was driving. She wanted the car because she was going to Iowa City * * * she wanted the car and we stopped off down town to get the deeds notarized. I don't think these deeds were signed on the date she took the interurban to Iowa City on a Saturday, I think it was on this Tuesday."

Nissen further testified that he did not tell her that she had to sign the three deeds because she was an officer in the corporation. There were exhibits presented at the trial which showed that there were checks in the amount previously mentioned given Nissen by the corporation. There was no testimony on behalf of the appellee-corporation whatsoever denying that there were some papers signed at the appellant's mother's home. On inquiry by appellant's counsel as to this fact Nissen testified: "She might have signed some papers." On further inquiry whether or not they were the deeds he testified, "I don't believe so. * * *

She might be signing some stock certificates * * * we had some things that had to be signed, and there were some transfers to be made, and uncompleted papers, I think that might have been the papers—."

The record further discloses the following:

"Q. You would state then that possibly she might have been signing some certificates that ought to have been signed before, and some uncompleted papers that should have been signed before? A. * * * I think that the papers that might be the ones she was signing as secretary, and I would be signing as president, were papers that just lacked her signature at the time she was acting as secretary. They were some papers dated prior to the time she was voted out. If she was signing that day as secretary they were papers which had to have her signatures, that were to be completed. If she was signing as secretary it was for some unfinished business which had not been completed, which was probably due to the fact that we went down to Florida."

It should be here stated that no corporation papers were offered in evidence showing that they were signed on or about March 1st. In connection with Nissen's contention that the deeds were signed on or about March 4th he testified:

"* * * I am not just positive whether my wife was right there and when [the notary] signed these papers that I had typed out * * *. I know that we were in a hurry and she wanted to get the car and that may be why there is some discussion about this at all * * *. After I had signed Exhibits 1, 2 and 3 [the deeds] I affixed the stamps. I thought it was the same day. I am not positive. * * * I think I typed them out the morning they appeared to have been signed, if not, it was the day before or very close to it. I think it was that morning."

George P. Nissen was the only witness called on behalf of the appellee-corporation. The mother of Nissen was not called as a witness.

The appellant testified that she never acknowledged the signing of any deeds before a notary. The notary who signed the certificate of acknowledgment on the deeds was deceased at the time of the trial.

It was the finding and the ruling of the trial court that the evidence failed to show that the appellee-corporation committed any fraud and that if there was any fraud committed by Nissen, the president and majority stockholder of the corporation, it was his fraud alone and not that of the appellee. It was the further finding and holding of the trial court that the transactions involved were the acts of George P. Nissen and were performed in pursuance of a contract or arrangement between himself and the corporation. It further held that in fulfilling his part of the contract Nissen was acting adversely to and not for the corporation and that the fact that he was president of the corporation could not under the circumstances shown by the evidence constitute him an agent or representative of the corporation and thereby make his acts the acts of the appellee. This conclusion on the part of the trial court necessitates our consideration of what has been termed the "sole actor" doctrine and also the question whether the appellee-corporation should be charged with the knowledge had by its president and majority stockholder. The trial court held that the evidence failed to show that Nissen dominated or controlled the action of the board of directors in entering into the contract and that there is no evidence from which any inference as to this fact might be drawn either way.

I. The liability of a principal for the acts of its agent growing out of the agent's knowledge of certain facts as well as the liability of a principal under certain circumstances, including the situation where the agent is the sole representative of the principal, is commented upon in 2 Am. Jur., Agency, 300, section 380, where it is stated:

"A qualification of the rule that the knowledge of an agent engaged in an independent fraudulent act on his own account is not the knowledge of the principal has also been made where the agent, though engaged in perpetrating an independent fraudulent act on his own account, is the sole representative of the principal. It is held under such circumstances that the agent's knowledge is imputable to his principal, and that the case falls within the general rule imputing the agent's knowledge to the principal. This qualification to the exception has been applied in cases involving agents and officers of corporations as well as in cases involving agents and other principals."

From a consideration of the many authorities we find the rule to be that a person is bound by the knowledge of his agent. This is predicated on the theory that it is the agent's duty to disclose all material facts coming to his knowledge with respect to the subject matter of his agency and it is presumed that he has discharged that duty. There is, however, an exception to this rule in cases where the knowledge of the agent is obtained while he is engaged in committing an independent fraudulent act on his own part, the communication of which to the principal would necessarily prevent its consummation. This exception or qualification is further qualified in the case of a fraudulent agent who is the sole representative of the principal and under such circumstances the imputed knowledge of the principal applies. See annotations 48 A.L.R. 464, 468, and cases cited; annotations 86 A.L.R. 537, and annotations 2 L.R.A., N.S., 994, and cases cited.

Further authorities bearing upon the question as to the "sole actor" doctrine as well as the liability of a corporation for the acts and knowledge of its agent are found in the case of Knobley Mountain Orchard Co. v. People's Bank, 99 W. Va. 438, 129 S.E. 474, 48 A.L.R. 459; annotations in 43 A.L.R. 615, 617; 48 A.L.R. 464, 465; 104 A.L.R. 1246, 1251; 111 A.L.R. 665; 4 Fletcher Cyclopedia of Private Corporations, 1918 Ed., 3501, section 2253; 3 C.J.S., Agency, 203, section 269. For further compilation of authorities see dissenting opinion in Blumberg v. Taggart, 213 Minn. 39, 49, 5 N.W. 2d 388, 393, and National Turners Bldg. & L. Assn. v. Schreitmueller, 288 Mich. 580, 285 N.W. 497; 13 Am. Jur., Corporations, 1039, section 1114, and cases cited.

There are several Iowa cases which support the theory as to the liability of a corporation or company by reason of acts and knowledge of its agents or representatives where the circumstances are somewhat analogous to the facts in the instant case. We shall not analyze these cases and the law as applied but reference is here made to Anderson v. Kinley, 90 Iowa 554, 557, 58 N.W. 909; Scow v. Farmers & Merchants Sav. Bk., 136 Iowa 1, 6, 111 N.W. 32; Barnes v. Century Sav. Bk., 165 Iowa 141, 171, 144 N.W. 367, and Kenwood Lumber Co. v. Armstrong, 201 Iowa 888, 895, 208 N.W. 371.

■ Applying the evidence in the instant case, a part of which has been heretofore set forth, to the rules of law heretofore announced it is our conclusion that the fraudulent acts of Nissen are imputed to the corporation through the knowledge of Nissen of his fraudulent acts. He was the sole participating agent of the corporation in the obtaining of the deeds from the appellant. It is our firm conviction that his acts in relation to the appellant in the obtaining of her signature to the deeds were fraudulent in character and have been proved by clear, satisfactory and convincing evidence. Eckhardt v. Bankers Trust Co., 223 Iowa 471, 478, 273 N.W. 347. The explanation of Nissen, the sole witness for the appellee-corporation, as to the time when and place where the deeds were signed is evasive. It is our further conclusion that the corporation through Nissen, its sole agent, had obtained knowledge of the fraudulent acts by which the deeds were obtained.

■ II.   We do not deem it necessary to comment extensively on the evidence relative to the notarial acknowledgment on the deeds. It is the recognized rule of this court that where an instrument bears a notarial certificate of acknowledgment the burden is upon the person challenging the statements set out in the certificate to prove his contention by clear, satisfactory and convincing evidence. First Trust Joint Stock Land Bank v. McNeff, 220 Iowa 1225, 1229, 264 N.W. 105. We believe the appellant has met the requirements of proof. We realize that the burden is upon her to prove her contention that her signature was not acknowledged before a notary public but where, as in this case, the sole witness for the appellee gives evasive and noncommittal testimony as to the appellant's acknowledgment of her signature on the deeds the testimony of the appellant and her mother takes on greater force. A notary's certificate is not conclusive. Section 622.40, 1946 Code; Brien v. Davidson, 225 Iowa 595, 603, 281 N.W. 150.

■ III.   It is the suggestion of the trial court in its findings of fact and conclusions of law that the appellant, after learning of the fraud of Nissen agreed to accept money in settlement of any claim she might have. The record bears out this statement. This proposed settlement was with Nissen and we do not see how it can be considered to have been with the corporation. However,

even if it may be said that there was a contemplated settlement with the corporation it was not carried out by it. It should be kept in mind that under the authorities heretofore set out the principal cannot accept the fruits of the fraud practiced by the agent, repudiate the agent and his knowledge and yet retain the benefit obtained from the fraudulent transaction. This is true, even if there is an adverse interest between the agent and principal. 2 Am. Jur., Agency, 300, section 380, supra. This is what the corporation is endeavoring to do. We cannot give our approval to such a procedure under the authorities previously set forth.

The appellee in the lower court in its pleadings did not allege and plead settlement. It merely denied the allegations of the appellant's petition. The trial court and especially this court cannot sustain a holding on a ground not presented by the pleadings. Johnson v. Cedar Memorial Park Cemetery Assn., 233 Iowa 427, 435, 9 N.W. 2d 385; Burnett v. Poage, 239 Iowa 31, 29 N.W. 2d 431.

IV. The relationship between the appellant, the wife, and George P. Nissen, her husband, was such as to create a confidential and fiduciary relationship. It has been our holding that where a fiduciary or confidential relation is shown to exist between the parties to a transaction the burden is upon the one claiming a benefit therefrom to establish entire fairness on the part of the party benefited. First National Bk. v. Ten Napel, 198 Iowa 816, 819, 200 N.W. 405. There can be no doubt in this present case as to the confidential relationship between the appellant and George P. Nissen. It is true there was no confidential relationship between the appellant and the corporation but the fact that Nissen was the sole representative of the corporation in the transfer of the properties while acting in a confidential relationship to his wife can and should be taken into consideration in our determination of this case.

V. We shall not comment on other grounds presented by appellant as a basis for a reversal. The record shows she only had a dower interest in one of the properties. The divorce decree terminated this interest. One of the properties in which the appellant had a joint tenancy interest has been sold by the appellee. The purchaser was not made a party in this action.

This last transaction cannot be questioned in the present action but the failure to include the purchaser in this proceeding does not preclude subsequent proceedings wherein the defrauded creditor may seek recovery of damages from the grantor who has sold the property and placed it beyond its power to restore. Davis v. Wilson, 237 Iowa 494, 505, 506, 21 N.W. 2d 553. Where, as in this case, the purchaser of the appellant's interest in the property was not a party to the action we are justified in remanding the case to the trial court for the purpose of bringing said purchaser in as a necessary party. Gunnar v. Town of Montezuma, 228 Iowa 581, 585, 586, 293 N.W. 1.

As to the remaining property held in joint tenancy by the appellant and Nissen it is our conclusion that the conveyance should be set aside to the extent that the appellant shall have a joint interest therein. We therefore hold that the decree of the trial court is reversed to the extent as hereinbefore set out and the case is remanded for a supplemental decree in conformity with our holding herein announced.—Affirmed in part; reversed in part and remanded.

HAYS, C. J., and HALE, BLISS and GARFIELD, JJ., concur.

SMITH and MULRONEY, JJ., dissent.

MANTZ, J., not sitting.

SMITH, J. (dissenting)—I am unable to agree with the majority decision. I am not much impressed with the argument that in the transaction which led to the signature of the deeds by plaintiff her husband was an agent of the defendant-corporation. It seems a more reasonable view that he was merely putting himself in a position to comply with his arrangement with the corporation.

However, I would concede that point and still have grave doubt as to whether the evidence is strong enough to support a decree of cancellation of the deeds.

Plaintiff bases her claim upon the alleged false and fraudulent representation that the signing of the blank deeds was "a mere matter of form in connection with performing the functions of George Peter Nissen and the plaintiff with the Nissen Trampoline Company"; and that the blanks were thereafter filled

out "falsely and fraudulently" by inserting descriptions, names, etc., so as to make them appear to be deeds from plaintiff to defendant.

She was or had been technically the secretary of defendant-company. The plain inference to be drawn from her pleading and testimony is that she was led to believe she was signing these printed blank deed forms as secretary of the company and not in her private or personal capacity.

She says:

"He told me that he needed my signature on some papers for the company, that as an officer of the company they had to have my signature on them. I had always done what he told me as an officer. I make no pretense to being an experienced business woman. All the years I worked with George Peter Nissen I relied on him absolutely in all business matters and I relied on him this day."

This states her complete case in its strongest light, except that she pleads she "was in ill health, greatly upset in mind and body." She testifies: "I was extremely upset * * *. I had been contemplating a separation and it was naturally a hard decision to make."

Of course her testimony as to knowledge of affairs and her mental and physical condition are uncontradicted except by her husband's testimony and by circumstantial evidence.

She was twenty-seven years old, had graduated from high school and had had one year in the state university and some courses in other institutions. She was champion tennis player in Cedar Rapids three years, including the summer of 1947. According to her own testimony, on the very evening of the day she signed the deeds she and her husband gave an athletic exhibition at Iowa City between halves of the basketball game with Purdue.

She had already been consulting a lawyer about her marital problem and her husband knew her intention and did not want a separation.

There is no contention or showing by pleading or proof that defendant-company owned, or that she believed it owned, any real estate that could be the subject of transfer by it. It is not

clear she knew title to any of the properties stood in her name in joint tenancy until the assessor's office telephoned her that she had lost a homestead exemption by the transfer to defendant.

Of course the burden is on plaintiff to establish the alleged fraud by clear and convincing evidence. After a careful study of this record I am convinced she has not carried this burden. There is the further significant fact that on March 24, 1947, just as she was about to get her divorce she made a property settlement with her husband. At that time she had full knowledge of the fact that the deeds she had signed purported to convey the property to the defendant-corporation. According to her own testimony she had already confronted her husband with the charge of fraud in obtaining her signatures to the deeds and he had agreed to account to her in cash and she had told him that would be all right.

It does seem to me that on the whole record her case is too weak to justify a reversal of the trial court who was in a much better position to appraise the situation than we are. I would affirm.

MULRONEY, J., joins in this dissent.