CASE 106—ACTION TO ENFORCE A MORTGAGE LIEN.—SEPTEMBER 30.

# Johnson v. Mutual Life Insurance Co. of Kentucky, &c.

APPEAL FROM JEFFERSON CIRCUIT COURT, CHANCERY DIVISION.

JUDGMENT FOR PLAINTIFFS AND DEFENDANT APPEALS.    AFFIRMED.

HUSBAND AND WIFE—SEPARATE ESTATE—POWER TO CONVEY—ESTOP-
    PEL OF MARRIED WOMAN—RECITALS IN DEED.

Held:  1. Under Gen. St. c. 52, art. 4, section 17, providing that
    "separate estates and trust estates conveyed or devised to mar-
    ried women may be sold and conveyed in the same manner as
    if such estates had been conveyed or devised absolutely, if there
    be nothing in the deed or will under which they are held forbid-
    ding the same, and if the husband (or trustee if there be one)
    unite with the wife in the conveyance," where the only re-
    striction in the will creating the separate estate was that the
    property was not to be sold, mortgaged, or incumbered for the
    payment of any liability of the husband, the wife had the right
    to sell the property upon any terms that were satisfactory to
    her, or to convey it by deed of gift, provided only that her hus-
    band joined in the conveyance.
2. Where husband and wife conveyed property which was the wife's
    separate estate to one who at once re-conveyed the property to
    the husband, each conveyance reciting a cash consideration, a sub-
    sequent purchaser from the husband was not charged with no-
    tice of the fact that the transaction was only colorable, and
    intended to evade a provision of the instrument creating the es-
    tate, by which the wife was prohibited from selling or incum-
    bering the property for any debt of the husband.

3. As against a subsequent innocent purchaser, a married woman
is estopped to deny the recital of her deed conveying her separ-
ate property to the effect that she had received the cash con-
sideration recited.

KOHN, BAIRD & SPINDLE, FOR APPELLANT.

### AUTHORITIES CITED.

1. A gift by appellant to her husband of the property in con-
troversy is not authorized by statute.    General Statutes, chap.
52, art 4, sec. 17; Hirshman v. Brashears, 79 Ky., 258.

2. The two deeds contemporaneously executed, one from ap-
pellant and her husband to Bartley, and the other from Bartley
back to the husband, constitute but one transaction, and should
be so construed.    Early v. Douglas, 23 Ky. Law Rep., 299;
A. & E. Ency. Law, 2 Ed., vol 17, p. 9; Parks v. Crook, 3 Bush,
163; Smith v. Theobald, 86 Ky., 141; Honore v. Hutings, 8
Bush, 687; Shuttleworth v. Ky. Iron, Coal, etc., Co., 22 Ky. L.
R., 1341.

3. The appellant is not estopped by her deed or otherwise
to show that the execution of the deed to Bartley, and the deed
from Bartley to her husband, was one colorable transaction,
was without consideration and in violation of the terms of her
father's will.    Louisville, etc., Railway Co. v. Stevens, 96 Ky.,
403; Gully v. Grubbs, 1 J. J. Mar., 390; Bourne v. Bourne,
92 Ky., 213; Sharpe v. Proctor, 5 Bush, 398; Glidden v. Strup-
ler, 52 Pa. Rep., 400; Jackson v. Vanderheyden, 17 Johns Rep.,
166; Richardson v. Stevens, 25 S. R., 39; McNeal v. Davis,
etc., 17 S. R., 101; Elston v. Comer, 19 S. R., 324; Bigelow on
Estoppel, 600.

4. No trustee being named for appellant by her father, in his
will, her husband became her trustee by operation of law.
Campbell v. Gailbreath, 12 Bush, 463; Cotton v. Brown, 3 Ky.
Law Rep., 679.

5. The record showing R. Burge's will, and the simultaneous
deeds from Johnson and wife to Bartley, and Bartley back to
Johnson, were notice to appellees of the infirmity in the hus-
band's title to the property in controversy, and that they were
taking a mortgage on property he had no right to incumber.
Pomeroy's Equity Jur., vol. 2, secs. 597 and 608.

6. The restrictions on the appellant's power of disposition over
the property in question, placed by Richardson Burge in his
will are not in contravention of any law, statute or common;
the will, therefore, is the law of this case, and is the yard-
stick by which the appellant's power of disposition over this
property is to be measured.

GORDON & GORDON, FOR APPELLEES.

The propositions which we submit to the court and for which we confidently contend, are these:

1. The title to the property conveyed is a fee simple separate estate, and as such could be conveyed by the wife under the form provided by the statute.

2. The limitation upon the title, as made in the will, was only, that the property should not be pledged or mortgaged or sold for the husband's debts, but did not limit the power of sale or gife either to the husband of another.

3. Having sold the property and made conveyance under the form prescribed by the statute, having stated in the conveyance that the consideration was $15,000 cash, the appellant is estopped, as to an innocent purchaser for value without notice, from alleging any fact, or setting up any right or defense which is inconsistent with the terms of her deed.

4. The mortgage for value without notice, occupies the place of the purchaser for value without notice, and is entitled to the same rights.

### LIST OF AUTHORITIES.

Chap. 52, art 4, sec. 17, p. 743 of the General Statutes; Parrott v. Kelly, 79 Ky., 490; Scarborough v. Kennedy, 9 B. M., .540; Kennedy v. Ten Broeck, 11 Bush, 251; Scarborough v. Watkins. 9 B. M., 546; 2 Story's Equity Jur., sec. 1398, p. 637; 2 Story's Equity Jur., sec. 1394; Kennedy v. Ten Broeck, 11 Bush, 251; Lillard v. Turner, 16 B. M., Pomeroy's Equity Jur., vol. 3, sec. 26; Gillespie v. Simpson, 18 S. W., Rep., 1050; Little v. Dodge, 32 Ark., 459; Scott v. Ward, 35 Ark., 480; Sellmeyer v. Welch, 35 Ark., 485; Jacques v. M. E. Church, 8 Am. Dec., 447 (17 Johnson, 549); Wright v. Arnold, 14 B. M., 513; Davis v. Tingle, 8 B. M., 543; 1 Story's Equity Jur., 517; Pomeroy's Equity Jur., sec. 418; Chapman v. Miller, 130 Mass., 289; Connelly v. Breatzler, 3 Bush, 702; Hicks v. Fisher, 78 Ky., 646; Broussard v. Broussard, 45 La., 1085; Gailbraith v. Longsford, 1 L. R. A., 523; Long v. Crossan, (Ind.) 4 L. R. A., 783; King v. Ray, 56 Ind., pp. 17, and 19; Grout v. Townsend, 2 Hill, 554 (Cent. Law Jour., vol. 4, p. 579); Grout v. Townsend, 2 Hill, N. Y., 552, &c.; Jones v. Frost, 7th Chancery App., 773; Halbert v. McCulloch, 3 Metcalfe, 456.

OPINION OF THE COURT BY JUDGE O'REAR—AFFIRMING.

This action was brought by the Mutual Life Insurance Company of Kentucky against Darwin W. Johnson and his

wife, Mary Louise Johnson, for the purpose of foreclosing a mortgage lien on certain real estate which had been mortgaged by Darwin W. Johnson and his wife, Mary Louise Johnson, the appellant, to said company, to secure a debt of the said Darwin W. Johnson. The German National Bank held a second mortgage on this property, executed by Johnson and his wife to it, and for that reason R. H. Courtney, receiver of the bank, was made a party defendant, and has filed a petition seeking to foreclose his mortgage lien on the same property. The appellant, Mary Louise Johnson, answered both the petition of the insurance company and the petition of Courtney, receiver, and alleges that, because of the express restriction of her power to alienate the property involved, contained in her father's will, under which she holds the property, and the deed of partition made in pursuance of that will, she had no power to sell or mortgage said property for her husband's benefit, such power being expressly taken away from her by said will; and that, therefore, her deed and mortgages upon which the appellees relied are of no effect. The will of Richardson Burge, deceased, the father of Mrs. Johnson, and the deed of partition referred to, contained the following limitation and restriction on the powers of Mrs. Johnson to incumber this property for the payment of her husband's debt: "And I will and direct that the two stores which shall be decreed under said partition to each of my said children shall vest in said child or children under this, my will, as follows: That is to say, the two stores which shall be decreed and deeded under said partition suit to each of my said daughters shall vest in them, and each one, as her separate estate, for her own separate use and behoof in fee, free from the use, debts and liabilities of their husbands, or any they may hereafter marry, and ever to remain free

and exempt from said husband's liabilities; and not to be sold, mortgaged or incumbered for the payment or satisfaction of any of said husband's debts or liability, whether said debts or liabilities be existing at the time of such sale, mortgage or incumbrance or thereafter contracted." Some years prior to the execution of the mortgages sued on, and after the deed of partition had conveyed the property to appellant, she and her husband, Darwin W. Johnson, executed a deed to one David Bartley, in which the consideration was recited as being $15,000 cash in hand paid, and in which they conveyed the fee-simple title to the property involved in this litigation. Thereafter, and on the same day, Bartley executed the deed to Darwin W. Johnson, husband of appellant, in which he conveyed to said Johnson the same property, reciting that the consideration was $15,-000 in hand paid. It was shown on the trial by Mrs. Johnson that she in fact received nothing as consideration for the conveyance executed to Bartley. After this conveyance to Darwin W. Johnson, he borrowed $10,000 from the Mutual Life Insurance Company of Kentucky, and executed the mortgage sued on by it herein to secure the payment of the same. He also executed to the German National Bank the mortgage sued on herein by R. Courtney, receiver of that bank, to secure the payment of $2,500, a part of which was an old debt of his, and a part of which was a debt thereafter created by the loan of an additional sum to Johnson. When the application for the loan was made to the appellee life insurance company by Darwin W. Johnson, he represented the title as being in himself. The insurance company referred the matter to their counsel, the late Judge Mix, who investigated the state of the record, and reported that Darwin W. Johnson had the fee-simple title to the land, and unincumbered save a mortgage to the trust com-

pany, which was to be settled out of the loan then being sought. Upon this state of record and facts the loan was made to Darwin W. Johnson. His wife (appellant) joined in the mortgages.

The following questions are raised by appellant, and interestingly discussed, but were all decided unfavorable to her by the chancellor, to-wit: She urges· (1) That the deed from Johnson and his wife to Bartley. and the deed from Bartley immediately back to Johnson, was one colorable transaction, was had for the purpose of avoiding the limitations and restrictions of Mrs. Johnson's title, and they were not effective to pass the title of Mrs. Johnson to her husband, or to destroy the restrictions and limitations in her father's will. (2) That Mrs. Johnson is not estopped by the recital in her deed, or otherwise, from showing that she did not receive any consideration for the conveyance to Bartley, or for the conveyance from Bartley to her husband, or from showing that the whole transaction was colorable, and done for the purpose of avoiding the limitations and restrictions on her title contained in the will of her father. (3) That the public record, which shows the limitations and restrictions contained in the will of Richardson Burge, and which shows the simultaneous execution and recording of the deeds from Johnson and wife to Bartley, and from Bartley back to Johnson, was sufficient notice to the Mutual Life Insurance Company and to the German National Bank of the fact that the transactions by which these two deeds were executed were colorable, and that they are bound by all the knowledge which they could have obtained had they made diligent inquiry, as a reasonable and prudent man would have made under the circumstances. These questions, embodying the defense of appellant, present the question of the nature of Mrs. Johnson's·title, and whether it

has passed from her; or whether, so far as appellees are concerned, she is estopped from denying that her title has been conveyed.

The will of Richardson Burge created in appellant a separate estate in this property. Its sole limitation was that it should be free from the debts and liabilities of any husband that she might have. The words, "as her separate estate, for her own separate use and behoof in fee, free from the use" of her husband, served only to create a separate estate in fee. These estates came into more favorable regard by the Legislature for a period, when it was provided Rev. St., c. 47, art. 4, section 17) that the separate estate of a married woman could not be alienated by her, even though her husband joined in the conveyance; nor could it be charged or incumbered but by order of a court of equity, and then only for the purpose of exchange and reinvestment, which was required to be under the supervision of the court. If the property was a gift to her, and the donor or his personal representative consented to it, the wife might convey her separate estate. Thus, substantially, the state of the law on this subject continued till the adoption of the General Statutes, when a radical departure was adopted; section 17, art. 4, c. 52, providing: "Separate estates and trust estates conveyed or devised to married women may be sold and conveyed in the same manner as if such estates had been conveyed or devised absolutely, if there be nothing in the deed or will under which they are held forbidding the same, and if the husband (and trustee, if there be one) unite with the wife in conveyance. But her interest shall be the same in the proceeds as it was in the estate." Independent of specific limitations, the effect of the deed or will creating the separate estate was merely to exclude the husband from what would have been his legal right with re-

spect thereto had the estate been the wife's general property—that is, the right to use the wife's land rent free, or to himself appropriate the rents; and, in case of personal property, to convert it, title and possession, to his own use. Save during the time when the Revised Statutes, supra, were in effect, and unless restricted specifically by the instrument creating the estate, the wife could bargain, barter, sell or exchange her separate estate, her husband (and trustee, if any) joining in the conveyance. She could mortgage it. She could dispose of it by will—even to her husband. Section 4, c 113, Gen. St.; Parrott v. Kelly, 79 Ky., 490 (3 R., 269). For aught that we can see to the contrary, she could make a valid deed of gift, provided her husband or trustee, if any, joined in the conveyance. 2 Story, Eq. Jur., section 1398. This section of the General Statutes was in force when the mortgages sued on were executed, and when the will creating this estate became effective. In addition to the necessary limitation upon this estate to make it a separate estate, to-wit, the exclusion of the husband's legal dominion and title, the will creating it had imposed an additional and customary one, viz., that it should not be charged for any debt or liability of the husband. This limitation was necessarily confined to the time while the wife held the title, for it was intended, not as a charge upon the property, but as a protection of the wife's interest while she owned it. If she in fact had sold it for $15,000, as she undoubtedly had the legal right to do, and the husband had subsequently acquired the title. it would not be urged that the limitation imposed by this deed would apply then to the property. Therefore we conclude that the wife had the right to sell this property, to mortgage it (but not for her husband's debts), or to convey it by deed of gift. There being no trustee, it was only necessary that her hus-

band join in the conveyance. When conveyed, the property was no longer separable estate. It became subject, as any other property, to any lawful use its owner saw proper to put it. In other words, the separate estate of a married woman, under the General Statutes, supra, was subject to her sole control and disposition in any manner that she might choose to make it, subject to one restriction (that it should not be used by her husband), and one condition (that the husband and trustee. if any, should join in the conveyance of it). If she sold it, the proceeds were by statute impressed with the same character. She was not prohibited, as she was under the Revised Statutes. from incumbering it for her own liabilities, from selling or exchanging it at an inadequate price. Anything that she might have done with it had she been single. she could do. 3 Pom. Eq. Jur., section 26; Lillard v. Turner, 16 B. Mon., 374. If the will or deed creating the estate imposed conditions or restrictions other than the statutory ones, the terms of the creating instrument must be looked to for their extent.

In the important case of Scarborough v. Watkins, 9 B. Mon., 540, 50 Am. Dec., 528, opinion by Judge Simpson, the court treats of various phases of conveyances of married women's property by deed or bargain and sale or gift. That case involved a transaction where the wife and her husband conveyed her land to a stranger for the purpose of reconveying it to the husband, so as to invest him with title. It was her general estate. On one particular point the decision in that case strikes us as being aptly in point here. It is: "The statutes authorizing a married woman to execute a deed of conveyance in conjunction with her husband make the deed, when acknowledged by the parties, with certain legal formalities upon the part of the wife, and recorded, as effectual for every purpose as if she were an un-

married woman. These statutes are sufficiently compre-
hensive to empower a married woman to make a deed of any
description; not merely a deed of bargain and sale, found-
ed upon a valuable consideration, but a deed of gift or of
mortgage, or release, or a deed of conveyance for any pur-
pose whatever." The statute there construed, in its extent
as empowering a married woman to convey her general
estate, is in no particular more comprehensive than the
one involved in this case, treating of her power to convey
her separate estate. In the same case and opinion it was
further held: "Upon the question of a supposed improper
influence by the husband, in cases like the present, the rule
in equity as to the power of a married woman to bestow
her separate property upon her husband has an important
bearing. Her right to give her separate estate to her hus-
band is firmly established. It is true, courts of equity ex-
amine every such transaction with great caution, and with
some apprehension of undue influence; but, unless such in-
fluence is evinced, the gift will be considered valid. 2 Story
Eq. Jur., 764, 765; Clancy, Mar. Wom., 350." We therefore
conclude that appellant had the right to sell her separate
property upon any terms that were satisfactory to her, or
to convey it by deed of gift, provided only that her hus-
band joined in the conveyance. The wisdom or folly of this
transaction is no more subject to the court's approval or
disapproval than is that of other contracts between com-
petent persons.

It is argued that this transaction is colorable, is patently
an attempt to defeat the provision of the will restricting
the estate from incumbrance for the debts of appellant's
husband; that the two deeds were in fact but parts of one
transaction, and were without consideration; that the facts
shown as above stated are sufficiently apparent from an in-

spection of the record of the two conveyances. Johnson
and wife to Bartlett and Bartlett to Darwin W. Johnson;
that the purpose of the parties was to make the wife's prop-
erty liable to the husband's debts in spite of the provisions
of the father's will giving her the property; that the subse-
quent purchaser or mortgagee must be charged with notice
of the facts; and that the conveyances are void. Waiving
for a time whether the wife might not, by a deed of gift,
properly executed, have invested her husband with the title
to this property, we come to an examination of appellant's
contention above outlined. We have stated, and it will
not be gainsaid, that Mrs. Johnson had the legal right to
sell her property, her husband joining. Suppose she had
sold it for $15,000 in fact, which was really the husband's
means and, to satisfy the notion of counsel, say they caused
the conveyances to be made exactly as appears in this case,
what is there in the will quoted that prevents the title from
passing? It undoubtedly would have been a valid trans-
action in law and equity. We may as well say here that
there is no question of bad faith, or fraud practiced or at-
tempted against the wife, nor question that $15,000 was a
fair and adequate consideration for the property. What
was there in the appearance of this transaction to indicate
other than that the husband was buying this property, and
actually paying for it, and took this method of taking over
the title, from the fact that the wife's conveyance direct to
her husband might be void, because of her lack of ability,
under the statute, to convey her separate estate, unless the
husband joined in the instrument as grantor? To our
minds, the conveyances do not present such an appearance
as should arouse the suspicions of an ordinarily cautious
inquirer. But if they had aroused this suspicion, to what

Vol. 113—56

would this inquiry probably have led him? For it is to be noted that the purchaser put on inquiry is chargeable, not necessarily with the truth, but with such knowledge as he would probably have gained had he inquired. Here he would likely and most reasonably have gone to the contracting parties. To learn what? Whether the recited consideration had actually passed? That question they had already answered. Each of them had said—the wife on privy examination before the officer taking the acknowledgment—that the consideration named had been paid at the time the deeds were made. These statements were as unequivocal as any other the parties could have made on that subject, and were such as to settle, and not to raise, doubts. If these statements could not be believed, then why ask them any questions? Nor could the inquirer have gone to the draftsman of the deed, if a lawyer, even if known (there is nothing showing who the draftsman was), for his information gained from his clients was privileged, and he could only have referred him to the parties. We hold that this transaction presented no such peculiar feature as to reasonably raise a doubt of the *bona fides* of the transaction, and that a subsequent purchaser had the right to accept as true what the parties to the transaction had unequivocally asserted to be the truth.

This section of the General Statutes (chapter 52, art. 4, section 17) was passed to enlarge the rights of married women with respect to their separate estates. It was the evident purpose of the Legislature to remove those restrictions contained in the Revised Statutes that had been found burdensome to married women because they hampered the use, and defeated in many instances the practical enjoyment of this class of property by its owners. When the Legislature determined to again permit married women to deal

with and sell their separate estates, subject only to the "veto right" of the husband, in requiring that he should join in the conveyance, it must be presumed that it was intended by the lawmaking body to facilitate, and not to uselessly embarrass or impair, this new privilege. When she was thus allowed to sell her property, it would be to frustrate the beneficent purpose of the Legislature to hold that the purchasers of a married woman's separate property would be subject to harassing doubts, and possible litigations and losses not involved in similar transactions with unmarried women or men. It would be to detract from its selling value in proportion to the doubts and difficulties, encountered by purchasers. The rule is, statutes are liberally construed in order to effectuate their purpose. Section 460, Kentucky Statutes. Therefore a construction of a statute intending to enlarge the property rights and contractual ability of a class will be rejected which tends to destroy or impair the value of those very rights and privileges. The circuit court based its judgment in part upon the principle of estoppel. It is claimed that, appellee having acted upon the faith of the recitals in Mrs. Johnson's deed that she had received the full cash consideration of $15,000 recited in the deed, she would not be heard now to say to appellee that her previous statement was not true, and thereby reclaim the property from appellee. The question is, to what extent may a married woman, by her conduct or statements, estop herself from subsequently asserting the contrary, where the rights of those misled by her are to be affected? It is not questionable that a single woman, or a man, would have been estopped by the concurrence of facts shown in this case. Why not the married woman, too? But for her conduct, her voluntary and willful statement, solemnly declared, and made a public record

for the purpose of being acted on, and with the knowledge that it would be acted on by others in dealings with reference to this property, appellees would not have parted with their money upon these mortgages.

The courts have not been uniform in applying the doctrine of estoppel to acts of married women. We shall not attempt a discussion of the question further than it affects her separate property. Pom. Eq. Jur., section 418, thus states the matter: "Upon the question how far the doctrine of equitable estoppel by conduct applies to married women, there is some conflict among the decisions. The tendency of modern authority, however, is strongly towards the enforcement of the estoppel against married women as against persons *sui juris,* with little or no limitation on account of their disability. This is plainly so in States where the Legislature has freed their property from all interest or control of their husbands, and has clothed them with partial or complete capacity to deal with it as though they were single." In Herm. Estop. ,section 1105, it is stated: "Under various statutes removing the common-law disabilities from married women, corresponding liabilities have necessarily been imposed on them. They take the civil rights and privileges conferred subject to all the incidental and correlative burdens and obligations, and their rights and obligations are to be determined by the same rules of law and evidence by which the rights and obligations of the other sex are determined under like circumstances. To the extent and in the matters of business in which they are permitted by law to engage they owe the same duty to those with whom they deal and to the public and may be bound in the same manner as if they were unmarried. Their common-law capacity can not serve as a shield to protect them from the consequences of their acts, where they have

statutory capacity to act.  A married woman is *sui juris* to the extent of the enlarged capacity to act conferred by statute, and may be so estopped by her acts and declarations, and is subject to all the presumptions which the law indulges against others with full capacity to act for themselves."  In Bigelow on Estoppel it is observed:  "At common law a married woman, according to the weight of authority, is not estopped by law or in equity by her covenants of warranty or by her recitals, except in regard to her equitable separate estate."  Page 329.  As to statutory separate estates, substantially the same doctrine is applied.  Kelly v. Turner, 74 Ala., 513; Harden v. Darwin, 77 Ala., 472. This question seems to have been discussed by this court only incidentally, and we might say collaterally, some two or three times.  In Wright v. Arnold, 14 B. Mon., 638, 61 Am. Dec., 172, the wife stood by without objection, and suffered her husband to sell her chose in action.  She did not controvert her husband's right to sell it.  The court said·  "She must be regarded as having induced the purchaser to make the contract, and under such circumstances it would be clearly inequitable to deprive him, at her instance, of the benefit of the purchase."  The court further declared that "the doctrine is well settled that neither infancy nor coverture will constitute any excuse for conduct which in other persons would, as it regards purchasers for a valuable consideration, be deemed unjust and fraudulent." In Heck v. Fisher, 78 Ky., 646 (1 R., 336), it was said: "While it is true, as said in Kennedy v. Ten Broeck, 11 Bush, 251, that a feme covert can only dispose of her lands in this State in the manner pointed out by the statute, it does not follow that she may not be estopped to assert title which her conduct has misled innocent parties to their prejudice."·  In that case the wife had suffered the husband

to place valuable improvements on her land, and in the suit of his creditors to subject it she objected that she could be deprived of title in the manner only pointed out by the statute. In Connolly v. Branstler. 3 Bush, 702 (96 Am. Dec., 278), the court held the wife estopped from asserting dower in her husband's estate, she having announced at the sale of his lands that she would not claim dower against any one who would become a purchaser. This court said: "Although her declaration to the bidders did not legally alienate her dower, yet, the sale being made on the faith of it, she is equitably estopped from asserting dower against the purchaser; for the disability of coverture could not exonerate her from fraud." While it is true that these cases seem to concern only the general estate of the married women, we fail to perceive why the salutary principles announced may not be applied as well to cases where her separate estate is involved. Estoppel operates not so much upon the estate as upon the conscience. Another, near in point as far as dealing with the question of estoppel and the separate estate of the feme, is Railway Co. v. Stephens. 96 Ky., 403 (16 R., 552) (29 S. W., 14, 49 Am. St. Rep., 303). In that case Mrs. Minor, a married woman, undertook to convey a right of way to her land (held as her separate estate) to appellant railway company. Her husband joined in the deed. It was never acknowledged as required by statute, nor lodged for record. The railway company having entered on the land and built its road, she sued to recover the damages. The plea of estoppel was urged against her recovery, and denied by this court. The deed of the married woman, to be effective as a deed, must have been acknowledged and lodged for record. Section 507, Kentucky Statutes; chapter 24, section 21, General Statutes. The court said: "The case is to be determined as if she

never signed the instrument. . . . She is not charged
with the perpetration of any fraud or misrepresentation.
If she has attempted to convey her lands, and failed to do
so in the manner required by the statute, it is as if she had
not made the attempt.". The court will not substitute any
other act for the one provided by statute for the, convey
ance of the married woman's property. But where she has
complied with the statute in every particular, then she is
acting within the scope permitted to her. In all connected
with that deed she acts as a *feme sole*, the prior conditions
to her acting at all having been first satisfied. Grout v.
Townsend, 2 Hill, 554. The reason for this seems to us to
be sound and just. The law permits her to sell her land
and to convey it. She has conveyed it in the manner point-
ed out by the statute. To make that conveyance valid, the
bargain and sale, the consideration and grant therein re-
cited, are essential. As against a subsequent innocent pur-
chaser who has relied on her statement as to the requisite
consideration and conveyance named, she ought not to be
heard to deny it. To permit it would be to suffer her to
nullify the very thing she had been permitted to do, and to
commit a wrong, characterized in Connolly v. Branstler,
supra, as a fraud. A highly interesting and learned dis-
cussion of this question may be found in Williamson v.
Jones (W. Va.), 27 S. E., 411, 4 Am. & Eng. Dec. Eq., 362.
The language of the supreme court of Indiana, in King v.
Ray, 56 Ind., 1 (although that case has not escaped crit-
icism by both Judge Seymour D. Thompson, in the Central
Law Journal, and Mr. Bigelow in his work on Estoppel),
appears to us a fair statement of the correct principle.
Said that court: "The statute which enables her [a mar-
ried woman] thus to convey, during coverture, the lands
held in her own right, imposes upon her as a corollary all

the obligations of the conveyance, save those which the statute itself excepts; for it would be an absurdity to say that she had passed her lands, if she could take them back again. And the estoppel does not depend upon the obligation of the covenant of warranty, although the books sometimes loosely say so. It depends upon good faith, right conscience, fair dealing and sound justice. When a person competent to act has solemnly made a deed, he shall not be allowed to gainsay it to the injury of those whom he had misled thereby,"--Citing, among others, Massie v. Sebastian, 4 Bibb, 433; Grout v. Townsend, 2 Hill, 554; Van Renssellaer v. Kearney, 11 How., 297, 13. I. Ed., 703. We therefore hold that in a deed conveying her separate property, when executed as required by statute, a married woman may estop herself, as against subsequent innocent purchasers, by recitals of essential facts in the deed.

The judgment of the circuit court, being in accord with these conclusions, is affirmed.