123 Utah 327 (1953)
259 P.2d 595
In re MADSEN'S ESTATE.
MADSONIA REALTY CO.
v.
ZION'S SAVINGS BANK & TRUST CO. et al.
No. 7589.
Supreme Court of Utah.
Decided June 26, 1953.
*331 McKay, Burton, Nielsen & Richards, George M. McMillan, Hadlond P. Thomas and Frank Armstrong, Salt Lake City, for appellants.
G.A. Marr and Paul B. Cannon, Salt Lake City, for respondent.
NELSON, District Judge.
This case was commenced by the Madsonia Realty Company filing a petition in the Probate division of the District Court in the matter of the Estate of Richard W. Madsen, deceased, asking for an order directing the executor in said estate to execute and deliver to Madsonia *332 Realty Company a deed to certain porperty known as 667 East 1st South Street, Salt Lake City, Utah, and more particularly described as follows:
"Commencing at the Southeast Corner of Lot 1, Block 60 Plat `B', Salt Lake City Survey, and running thence North 160 feet; thence West 99 feet; thence South 160 feet; thence East 99 feet to the place of beginning."
It was alleged by the petitioner that on or about January 1, 1937, Richard W. Madsen sold to petitioner, Madsonia Realty Company, the land above described. Petitioner further alleged that no formal deed was ever executed or delivered by the said Richard W. Madsen to the Madsonia Realty Company, but there was an agreed price of $10,680, which was paid by the said Madsonia Realty Company to Richard W. Madsen; that at the time of the said sale Richard W. Madsen was president and general manager of the said Madsonia Realty Company and also kept the account books of said company; that as of January 1, 1937, the said Richard W. Madsen, as general manager of said company and as the bookkeeper thereof made a record of sale by entering the same on the journal and ledger account of said company; that no actual cash or money was delivered to said Richard W. Madsen, but his account was credited in the amount of said purchase price and the property was thereby paid for in full.
Subsequently the defendant, LaReta C. Madsen filed a demurrer and answer to said petition and an answer was filed by the executor. The District Court directed a transfer of the matter to the Civil Division of the court, and the matter was tried as a civil suit.
LaReta C. Madsen maintained that the purported sale or conveyance of any property or interest in any property by Richard W. Madsen to the Madsonia Realty Company as described in the petition of the said company was void by reason of the provisions of Section 33-5-1 Utah Code Annotated 1943, and the provisions of Sec. 33-5-3 and Sections *333 104-2-6 and 104-2-23 Utah Code Annotated 1943; the said LaReta C. Madsen further alleged that on the 30th day of October 1935, she and Richard W. Madsen were married and ever since said date, to and including the date of the death of the said Richard W. Madsen on May 17, 1948, were husband and wife; that at the time of the marriage of the said parties Richard W. Madsen was the sole owner of the premises at 667 East 1st South Street, Salt Lake City, and more particularly hereinbefore described. She further alleged and maintained that she received no consideration for any sale or contract to sell, and at no time released or conveyed to the Madsonia Realty Company any interest in the said premises.
LaReta C. Madsen further set out that on June 6, 1946, she and her husband Richard W. Madsen entered into a uniform real estate contract of sale wherein they agreed as vendors to sell and convey the aforesaid real property to James O. Peterson and C. Amelia Peterson for a consideration of $16,500; that at the time of the execution of said contract to James O. Peterson and C. Amelia Peterson, the said LaReta C. Madsen believed and was led to believe by Richard W. Madsen and Madsonia Realty Company that said property was the property of Richard W. Madsen only; that at no time has the said LaReta C. Madsen relinquished her dower in and to said real property to Richard W. Madsen, to the heirs or devisees or creditors of Richard W. Madsen or to Madsonia Realty Company, and that she is entitled to her statutory interest in and to said property as the surviving widow of Richard W. Madsen, deceased.
That the said Madsonia Realty Company has no title, right or interest in or to any of the property as hereinbefore set out and described, and that she as one of the parties to the contract of sale of said property to the Petersons as aforesaid, is entitled to have assigned to her by the Court not more than one-half nor less than one-third of all sums paid under the contract.
*334 The executor herein defended the action on the theory that there was no writing to satisfy the Statute of Frauds (Utah Code Annotated 33-5-1, 1943), and no writing subscribed as required by 33-5-3 of the Utah Code Annotated, 1943, and that the action was barred by applicable Statute of Limitations, citing Utah Code Annotated 104-2-5, 22(2), 23 and 30.
Upon the trial the District Court established the following facts:
That Madsonia Realty Company is and since 1923 has been a corporation of the State of Utah. That Richard W. Madsen died on the 17th day of May, 1948, and thereafter on June 2, 1948, Letters Testamentary were issued to Zion's Savings Bank and Trust Company as executor of the last will and testament of Richard W. Madsen, deceased. That LaReta C. Madsen and Richard W. Madsen were married October 30, 1935, and said parties continued as husband and wife to the date of death of Richard W. Madsen. That at and prior to the time of the said marriage Richard W. Madsen was the sole owner of the premises located at 667 East 1st South Street, Salt Lake City, Salt Lake County, Utah.
That on or about January 1, 1937, Richard W. Madsen by oral agreement sold to Madsonia Realty Company the property above described for $10,680. Richard W. Madsen evidenced said sale by entering the same on the books of Madsonia Realty Company in his own handwriting, he being president, general manager and bookkeeper of said company. Richard W. Madsen received the full consideration but failed to deliver a deed to said property. That from January 3, 1937, to June 6, 1946, Madsonia Realty Company collected all the rents from said property, paid all the taxes on the same, and paid all upkeep and repair of said property. The said property was occupied by tenants of said Madsonia Realty Company from January 1, 1937, to June 6, 1946.
*335 That on the 6th day of June, 1946, said property was sold to James O. Peterson and C. Amelia Peterson, his wife, for the price of $16,500. That the contract was evidenced by an instrument in writing signed by James O. Peterson and his wife as buyers and by Richard W. Madsen and LaReta C. Madsen, his wife, as sellers. That Richard W. Madsen was in fact acting for and on behalf of Madsonia Realty Company in the signing of the said contract. That Richard W. Madsen entered the sale of the property on the books of the Madsonia Realty Company and credited the buyers on the books of the said company with all payments made on the contract. That the contract provided for down payment of $4,000 and monthly payments of $125. That Richard W. Madsen caused the profit made by the Madsonia Realty Company on the transaction to be entered upon the books of account of said company, and made showing of the profit on income tax returns of the Madsonia Realty Company.
Court further found that LaReta C. Madsen signed the said contract of June 6, 1946, voluntarily as the wife of Richard W. Madsen, and without any misrepresentations made to her by Richard W. Madsen or any other person as an inducement to sign said contract. That LaReta C. Madsen signed said contract for the purpose of and did release her statutory dower right in said property pursuant to Section 101-4-3 Utah Code Annotated, 1943. That at no time did Richard W. Madsen or any other person promise LaReta C. Madsen all or any portion of the purchase price for said property. That during a period from April 8, 1936, to March 29, 1937, Richard W. Madsen transferred to LaReta C. Madsen from his account in the Madsonia Realty Company to her account in said company $3,567.50 and during the time of their marriage Richard W. Madsen, transferred to LaReta C. Madsen, his wife, in addition to living expenses, money, and property of a value of not less than $49,000. That Richard W. Madsen left a last will and testment which has been admitted to probate *336 in this Court, and LaReta C. Madsen has elected to take under said will and does not renounce the provisions thereof in her favor. That neither at the time of the execution of the Peterson contract on or about June 6, 1946, nor at any time prior thereto did LaReta C. Madsen know that Madsonia Realty Company had or claimed any right, title or interest in or to the aforesaid property.
The Court ordered, adjudged and decreed:
(1) That Zion's Savings Bank and Trust Company as executor of the last will and testament of Richard W. Madsen, deceased, execute and deliver to Madsonia Realty Company, a corporation, a deed transferring all its right, title and interest as the executor of the last will and testament of Richard W. Madsen, deceased, including all the right, title and interest which Richard W. Madsen had or owned at the time of his death in and to the property hereinbefore described. That said transfer shall include an assignment of the interest of said Zion's Savings Bank and Trust Company as said executor in and to that certain contract dated June 6, 1946, wherein Richard W. Madsen and LaReta C. Madsen, his wife, appear as sellers, and James O. Peterson, and C. Amelia Peterson, his wife, appear as buyers, together with all moneys owing upon said contract.
(2) That LaReta C. Madsen has released her statutory dower right and has no present interest in or to the property hereinbefore described.
(3) That LaReta C. Madsen has no right to or claim upon any of the moneys which have been paid or which shall hereafter be paid upon the Peterson contract nor is she entitled to an accounting by the Madsonia Realty Company or Zion's Savings Bank and Trust Company as executor of the last will and testament for any of the moneys collected or to be collected upon the Peterson contract.
*337 (4) That Madsonia Realty Company is not entitled to an order directing LaReta C. Madsen to execute a deed to Madsonia Realty Company conveying said property to said corporation.
(5) That Madsonia Realty Company is not entitled to a decree quieting title to said property as against LaReta C. Madsen.
(6) That LaReta C. Madsen is not entitled to have set apart to her any statutory dower interest to said property.
The defendants below and appellants here assail the judgment and decree of the District Court, and base their appeal on four points, as follows:

Point No. One
The action of the plaintiff and respondent is barred by the Statute of Limitations.

Point No. Two
That plaintiff failed to prove a compliance with the Statute of Frauds.

Point No. Three
The lower court erred in its Conclusion of Law, wherein it found
"That LaReta C. Madsen, by the signing of the contract to James O. Peterson and C. Amelia Peterson, released her statutory dower right as provided by Section 101-4-3 Utah Code Annotated, 1943, and she has no present interest in or claim upon said contract."

Point No. Four
That the silence of Richard W. Madsen, Sr., and the plaintiff, and their failure to disclose the alleged interest of the plaintiff in the land at the time of the execution of the Peterson contract, constituted a fraud upon Mrs. Madsen. *338 That plaintiff should be required to account to her for one-third of the total sales price, and such relief to her should be a condition to any relief to plaintiff in this action.
We shall consider the points relied upon by appellants in the order in which they are presented.

Point No. One
In support of the position they take by Point One the appellants refer to Sections 104-2-5; 104-2-22; 104-2-23; 104-2-30 Utah Code Annotated, 1943. They maintain the District Court failed to indicate, in any manner, whether the Statute was tolled in some respect or by some act of the parties or what other reasons it may have had for enforcing the alleged agreement admittedly made on the 1st day of January, 1937. We cannot see where any question of tolling a Statute is here presented. The question is what is the date when the time for performance can be measured. The lower court was not in error in holding, in effect, that Richard W. Madsen, and his estate are the trustees of the legal title of the property in question for the benefit of the Madsonia Realty Company. At no time after the making of the contract on January 1, 1937, until the date of his death, May 7, 1948, did Richard W. Madsen repudiate the rights of the Madsonia Realty Company. On the contrary he openly acknowledged the rights of the company as set out in said agreement, and openly acknowledged the fact that the Madsonia Realty Company was the owner of the property in question. As to Point One, appellants' position is untenable for two reasons:
First, in no event was there a breach of trust by Richard W. Madsen to the date of his death, May 17, 1948, and any action taken subsequent thereto was within time of any Statute mentioned by the appellants. There is nothing in the record of this case which shows the Madsonia Realty Company ever made a demand on Richard W. Madsen for conveyance of legal title which was refused by the said Richard W. Madsen. Nor does the *339 record disclose any repudiation by Madsen of the January 1, 1937, contract, nor does it show any hostile assertion or holding by Madsen against the Madsonia Realty Company, which would mar the relation, and other trust or fiduciary relations which would be required to bring into operation the Statute of Limitations, whether applicable Statute would be 7 years, 6 years or 4 years. This Court has held that such condition or conditions must exist before the Statute of Limitations will begin to run. Hatch v. Hatch, 46 Utah 116, 148 P. 1096.
The second reason why appellants contention is wrong is:
The Madsonia Realty Company was in possession of the property in question at all times subsequent to January 1, 1937. Until the contrary is established there is no valid reason for one to presume that a trustee will not fulfill his obligation. It could be assumed with confidence by the Madsonia Realty Company that Richard W. Madsen would abide by and fulfill the terms of the January 1, 1937, contract. At no time did Richard W. Madsen by word or conduct repudiate the said contract. Being in possession the Madsonia Realty Company did not lose its equitable title and estate by any of the Statutes of Limitation pleaded, i.e., 104-2-5; 104-2-22; 104-2-23; 104-2-30 as claimed by appellant. See 34 Am. Jur. 296, Section 381; 55 Am. Jur. pages 784-785, Section 357.

Point No. Two
In support of Point Two, appellants maintain:
(A) There was no memorandum reduced to writing. See 33-5-1 Utah Code Annotated, 1943.
(B) No writing was subscribed by the parties to be charged. See 35-5-3, Utah Code Annotated, 1943.
(C) Plaintiff proved insufficient part performance to take the case out of the Statute of Frauds.
*340 We agree with appellants that there is no memorandum reduced to writing and no writing was subscribed by the parties, leaving only (C) for our consideration. This eliminates the necessity for any review of the law cited in support of (A) and (B). There was no instrument in writing subscribed by Richard W. Madsen sufficient to meet the requirements of the Statute of Frauds, but the record does show that there was a substantial part performance of the contract of January 1, 1937, sufficient to avoid the Statute of Frauds.
The record justifies a finding that:
(1) There was a payment of consideration.
(2) That there was delivery of possession.
(3) The Madsonia Realty Company collected all of the rents, paid all of the taxes, made all repairs and paid an income tax on the profit.
This Court has adopted and followed the general rule laid down by Besse v. McHenry, 89 Mont. 520, 300 P. 199, which states:
"Part performance which will avoid statute of frauds may consist of any act which puts party performing in such position that nonperformance by other would constitute fraud." Eccles v. Kendrick, 80 Mont. 120, 259 P. 609; Shaw v. McNamara & Barlow, 85 Mont. 389, 278 P. 836; 27 C.J. pp. 343, 344; 37 C.J.S., Frauds, Statute of, § 249; Utah Mercur Gold Mining Company v. Herschel Gold Mining Company, 103 Utah 249, 134 P.2d 1094.
It should be kept in mind the parties in this case cannot be placed in a position of status quo. Richard W. Madsen is now dead. Having accepted the consideration and having surrendered possession his heirs and successors in title and interest should not now be allowed to repudiate the contract. Such an act would in fact constitute a fraud. We are cognizant of the charge that the Madsonia Realty Company was an alter ego of Richard *341 W. Madsen, a cabal created for some sinister purpose. The fact remains, however, that under the law they are two distinct persons and for the purposes of this case must be so considered.
It is provided by 33-5-8 Utah Code Annotated, 1943, that nothing in the chapter on Fraudulent Conveyances shall be construed to abridge the powers of courts to compel specific performance of agreements in case of part performance thereof. In the exercise of such power, we have held in Adams v. Manning, 46 Utah 82, 148 P. 465 that: If plaintiff relies upon a parol contract of sale, the "first essential" is to establish contract by competent evidence. And in order to
"make possession available as part performance, it must appear that it was given or taken in pursuance of a parol contract proved;"
such possession must be notorious, exclusive
"and of the very tract of land which was the subject of the contract, * * * the possession should be established without qualifications or doubt."
We hold the record supports the District Court's finding that the requirements set forth in the case quoted have been met in this case. In support of Court's ruling see Barrett v. Vickers, 100 Utah 534, 116 P.2d 772; Anderson v. Cercone, 54 Utah 345, 180 P. 586; Wheelwright v. Roman, 50 Utah 10, 165 P. 513; Price v. Lloyd, 31 Utah 86, 86 P. 767, 8 L.R.A.N.S., 870.
We hold the record supports the conclusion that the agreement between Richard W. Madsen and Madsonia Realty Company was to sell the entire fee simple interest in the property situated at 667 East 1st South, Salt Lake City, Utah.

Point No. Three
Appellants Point Three raises the question, i.e., did LaReta C. Madsen in the signing of the contract of sale to *342 James O. Peterson and C. Amelia Peterson release her statutory right of dower. To answer this question it will be necessary for us to consider in a general way the subject of dower.
Utah has by 101-4-9, Utah Code Annotated, 1943, abolished common law dower, and has substituted therefor the provisions of Section 101-4-3, Utah Code Annotated, 1943 This section in part provides:
"One-third in value of all the legal or equitable estates in real property possessed by the husband at any time during the marriage, to which the wife has made no relinquishment of her rights, shall be set apart as her property in fee simple, if she survives him * * *."
The principle of dower is expressed in the Statute, and is maintained though the form of administration has been changed.
We shall therefore speak of the rights granted by the above section as statutory right of dower, or statutory right in lieu of dower. So considered an inchoate right of dower is the legal right or interest, or the expectation of a future right or interest which a wife acquires by marriage in the legal or equitable estates in real property possessed by the husband at any time during the marriage. We recognize it to be the fact the right of dower or its statutory equivalent has always been highly favored in the law. It is one of the most ancient of our principles, dating back into antiquity. So much is it part of our institutions that as Lord Bacon said in 1641, "The law favors three things  life, liberty, and dower." The wife's sustenance is a matter of great concern. The purpose of the law is to assure proper support of the widow after the death of her husband.
The record shows that at all times between the date of marriage October 30, 1935, and the date of his death on the 17th day of May, 1948, LaReta C. Madsen had been a true and loyal wife to Richard W. Madsen. That although there was a great difference in age, yet each had found happiness in their association with the *343 other, and that she had tenderly administered to him in time of need and distress. Mrs. Madsen was a young woman of beauty and charm. In her Mr. Madsen found love, devotion and loyalty, resulting in his happiness. She was entitled to all she received. It is true Mr. Madsen was a man of wealth, but we cannot probe for reasons why more was not given to her. It also appears that with them periods of dissonances were fewer than with most married people. Nevertheless it is true that the courts cannot preserve and hold for a widow something which she has voluntarily sold or disposed of. Dower cannot be revived at the cost of a wife's liberty to contract. The Court cannot arbitrarily vitiate a sale that has been voluntarily made. The granting of dower in Utah is a matter of statutory regulation, as is the disposition of such right. The right of dower, its use and its loss or disposal are determined by the laws existing at the time. Dower is not a part of the marriage contract, although marriage is a prerequisite. It is a right arising, existing and passing by the operation of law. We have heretofore held that
"by constitutional provisions and statutory enactments the common-law disabilities of married women have been abrogated, and married women are in all respects, with reference to their separate property and power to contract, on the same footing as other persons." Williams v. Peterson, 86 Utah 526, 46 P.2d 674, 679; Morrison, Merrill & Co. v. Clark, 20 Utah 432, 59 P. 235, 77 Am.St.Rep. 924; 40-2-1 Utah Code Annotated, 1943; 40-2-2 Utah Code Annotated, 1943; 40-2-3 Utah Code Annotated, 1943; 40-2-6 Utah Code Annotated, 1943.
A married woman in this State has been emancipated in civil and political affairs. Thus she can convey or incumber the real property she owns, and may otherwise control the same, or lease or contract with reference thereto the same as any other person. Such liberty carries with it corresponding responsibilities and liabilities. We are of the opinion and so hold that a married woman, being able to buy, sell, own and dispose of real property as freely as her husband is subject to the rules *344 of estoppel. Release of dower is based on the principle of estoppel rather than contract. A husband has the whole legal title to his property while he lives. The wife's right of dower is a dependent right; it is not certain, but rather a possibility, coming from or growing out of a coming event. It does not affect the seisin of the husband's grantee. He acquires the title that vested in the husband by the deed. The grantee has legal title encumbered by the dower unless the wife has by a proper written instrument freed the title of the encumbrance. A married woman although under coverture at the time may by any legal form of conveyance divest herself of her dower right, and such conveyance will operate as an estoppel. To permit her to repudiate her act would be to allow her to nullify the very thing she has by law been permitted to do. See Johnson v. Mutual Life Ins. Co., 113 Ky. 871, 69 S.W. 751; Ratcliff v. Coleman, 241 Ky. 791, 45 S.W. 2d 493; 141 A.L.R, 487.
Appellants contend and the lower court found that Richard W. Madsen signed the Peterson contract as trustee of the Madsonia Realty Company. Appellants further maintain that LaReta C. Madsen joined with Madsonia Realty Company in the signing of the Peterson contract and not with Richard W. Madsen acting in the capacity of her husband, and therefore, she did not relinquish her dower in the land by joining with her husband in his signing of the Peterson contract. In support of their position appellants cite a number of authorities. Scribner on Dower, Edition, Vol. 2, page 307; Robinson v. Bates, 1841, 3 Metc., Mass. 40; Tiffany on Real Property, 3rd Edition, Vol. 2; French v. Peters, 33 Me. 396; Fulk v. Robinson, 140 Ark. 212, 215 S.W. 674; Page v. Page, 6 Cush., Mass., 196.
All these authorities may be distinguished from the case at bar by the fact that LaReta C. Madsen did actually join with Richard W. Madsen in the same instrument. The fact that Richard W. Madsen executed the Peterson contract as a representative of the Madsonia Realty Company *345 did not change his marital status, and when LaReta C. Madsen signed the same instrument with him she signed as his wife, and in so doing relinquished her inchoate right of dower in the real property covered by that contract. The record supports the trial court's finding that she signed the contract with her husband, and in so doing enabled him to contract for the passing of title free from her inchoate right of dower. She is now precluded from repudiating her act or claiming against the contract she executed, by asserting a divested right. To permit her to do so would allow her to perpetuate a wrong, contrary to law and equity. Her renunciation of dower is to attend the act of her husband in that agreement, to endure as long as it endures; and no longer. If the acts of her husband in the execution of that contract are for any reason avoided, the right of her dower remains unimpaired.
The appellants and respondents have raised the questions: (a) Can a wife relinquish her dower right to her husband, and (b) Must the act of conveyance or relinquishment be by the same instrument with her husband, or may it be accomplished by the wife in a separate instrument. These questions we need not answer in this case, because they are not germane to the decisive issues in this case. The facts of this case are different. Here the wife LaReta C. Madsen did join with her husband in the execution of the Peterson contract. See Fowler v. Chadima, 1907, 134 Iowa 210, 111 N.W. 808; 17 Am. Jur. 716. There definitely is a privity of contract between Madsonia Realty Company and the Petersons, and Madsonia Realty Company is obligated to deliver title. LeCroy v. Cook, 211 Ark. 966, 204 S.W. 2d 173, 1 A.L.R. 2d 1032.
We are of the opinion and so hold that a wife can, without additional consideration to that inuring to her husband, release her statutory dower right. The consideration need not move to her directly. She benefits in the consideration reaching her husband and in his enrichment. She may, however, take a consideration as a condition *346 of releasing dower. A wife can sell her own interest
"when upon a sufficient consideration moving directly to her, or upon a consideration moving to her husband in the sale * * * of his land",
she executes a formal release. Fowler v. Chadima, 1907, 134 Iowa 210, 111 N.W. 808, 810. See 28 C.J.S., Dower, § 65, pages 138-139. See Brumer v. Brumer, 223 App. Div. 186, 228 N.Y.S. 63; In re McBride's Estate, 253 Mich. 305, 235 N.W. 166; Marshall v. Reed, 237 Mich. 336, 211 N.W. 637; In re Brown's Estate, 140 Or. 615, 14 P.2d 1107. In so holding we dispose of argument 3 under Point Three of Appellants' Points. The wife has only one right of dower in one piece of property. If she divests herself of that right she no longer has it. It is not a question of resuscitating a dormant right. The right she had is gone, it no longer exists. To hold otherwise would mean a complete release of dower could never be effected. Whatever interest, if any, a husband may have in a contract of sale, is not subject to wife's dower, when in absence of fraud, the wife has voluntarily disposed of such right. The lower court did not err in finding and concluding Mrs. Madsen has no interest in the land.

Point No. Four
In considering Point Four of points relied upon by appellants we must answer one question: Was a fraud perpetrated upon Mrs. LaReta C. Madsen in securing her signature to the Peterson contract. It is not for us to collate all the activities of Richard W. Madsen. It may well be that all his business transactions were not beneficient or productive of benefit to his wife. Yet on the whole it does appear that she was well provided for during the time she and her husband cohabitated with each other, having received from her husband (in addition to all living expenses) gifts, money and property of not less than $49,000. (R. 73, Finding No. 8) Living in the Hotel Utah with every convenience, *347 she certainly was no scullion. There is no evidence of antipathy between Mr. and Mrs. Madsen, nor can we find any disparagement of one by the other at any time. It may be true that Mr. Madsen was imperious in conduct, but certainly he was no chameleon, nor was he malevolent. He loved his wife and wanted her to have the best. As is always true  there is conduct that is impervious, but this would not justify a conclusion that he willed to delude his wife. In the signing of the Peterson contract there is no evidence of beguilement by Mr. Madsen.
Richard W. Madsen, a malapert person, mastered the technique of his business. He became an expert in his work by acquiring a knowledge of details and procedure essential to expertness in the execution of his work. In paying taxes his was not a recalcitrant reaction, but rather an adroit solution. He was not a sycophant but a skilled manipulator. This may explain the reason for the creation of the Madsonia Realty Company. This company was not a canard for the public, but a means of conducting his business to reap the greatest net return. In all this his wife reaped a profit. He first had to acquire before he could give to her. This may explain the sale of the property to the Petersons, rather than an evil intent to cheat his wife out of any rightful inheritance that may have been hers. In any event to uphold the appellants or Point Four we must find in his conduct, by word or act, that he intended to and did deceive his wife and thereby induced her to sign the Peterson contract. This we cannot do. The record would not support such a finding. Where a couple lived as happily with each other as the Madsens, we realize we must exercise care in reaching a conclusion. The record does not disclose that he was ever captious with his wife. Rather it shows they both were conversant with the conduct of each other and open and frank in their relations. There is no evidence of any brabbling between them. On the whole theirs was a harmonious relationship. It is doubtful that Mrs. Madsen *348 thought her husband was pernicious  that he was corrupt or would undermine her interest  that he would wilfully deceive her. As time goes on she will come to think of her husband's wrongs as venial. To say she was not graciously and generously treated is a calumny. It must be borne in mind he had children he loved by a former wife. He lived with a memory of his children's mother. There was a filial duty arising therefrom. When it comes to disposing of property and money amongst relatives one seldom acts out of experience. "Experience is like the polestar; it only guides a man in the evening, and rises when he has gone to rest." Could Mr. Madsen have foreseen what was to follow he would have exercised greater care in the preparation of his will.
Fraud is clearly defined in the case of Jesse French Piano & Organ Co. v. Gibbon, Tex.Civ.App., 180 S.W. 1185, 1187 as follows:
"`Fraud is defined to be any act, omission, or concealment, which involves a breach of legal duty, trust, or confidence justly reposed, and is injurious to another, or by which an undue and unconscientious advantage is taken of another; and it may be collected and inferred from the nature and circumstances of the transaction'".
The record in this case does not disclose any act of affirmative misrepresentation. Richard W. Madsen did not tell his wife any untruth before or at the time she signed the Peterson contract. He did not give any fake information of the facts which misled his wife. Mrs. Madsen admitted she discussed the Peterson contract with her husband; "that he brought the contract to their home and she signed it." That he told her it was a contract to "convey our home." There is no testimony by Mrs. Madsen that in their discussion Mr. Madsen deceived her in any way. She knew she was signing a contract of sale which involved the transfer of title to her home and by which she was divesting herself of her dower right. She then made no inquiry as to any of the things of which she now *349 complains, i.e., the money from the sale was not placed in joint bank account; that the money was going to the Madsonia Realty Company; that her husband was acting as a fiduciary of the corporation; that she had never been informed of the interest Madsonia Realty Company had in the property; that her husband had already sold property to Madsonia Realty. If there was fraud by Richard W. Madsen we must find it in some omission or concealment of material fact or facts. We agree with counsel for appellant that a husband owes to his wife a high degree of good faith, and that
"husband and wife occupy a relation of special trust and confidence, and when such relationship is abused, equity will intervene to right the wrong."
We further agree with counsel that Madsonia Realty Company would be charged with the fraud of Richard W. Madsen if fraud had been perpetuated by him. A diligent examination of the record does not show that LaReta C. Madsen was directly or indirectly misled, or that by affirmative misrepresentation or omission or concealment she was confused, or her judgment affected, or that she had been made the victim of a person who was wilful, importunate or cunning. See Pursley v. Wikle, 118 Ind. 139, 19 N.E. 478, 480; Shirk v. Mitchell, 137 Ind. 185, 36 N.E. 850.
It appears that Mrs. Madsen did know of the sale of the property by her husband to the Madsonia Realty Company. She knew the position he held and in a general way of his responsibilities. The Madsonia Realty Company was entitled to the money paid by the Petersons. Mr. Madsen had been paid $10,680 for the property. Mrs. Madsen benefitted from money paid to her husband. Not only that but Mrs. Madsen received $3,567.50 of which $1,187.50 had been paid to her after the sale of the home, from funds due her husband from Madsonia.
*350 To find for Mrs. Madsen on this Point the lower court would have had to find:
(1) A representation by Richard W. Madsen of a material fact relative to securing the signature of Mrs. Madsen on the Peterson contract.
(2) That such representation was false and Richard W. Madsen knew at the time of the signing it was false.
(3) That Mrs. Madsen relied upon the representation believing it to be true.
(4) That Mrs. Madsen was damaged by reason of her reliance on the representation which was false.
The record would not support any of such findings and therefore the lower court was not in error in finding,
"That LaReta C. Madsen signed the contract of June 6, 1946, voluntarily as the wife of Richard W. Madsen. That there were no misrepresentations made to LaReta C. Madsen by Richard W. Madsen or any other person as an inducement to sign said contract, and that Mrs. Madsen signed the contract for the purpose of releasing her statutory dower right."
The authorities cited by appellants with regard to their claim of fraud are not in point. In the cases of Nissen v. Nissen Trampoline Co., 241 Iowa 474, 39 N.W.2d 92, and Kratli v. Booth, 99 Ind. App. 178, 191 N.E. 180, there were affirmative misrepresentations by the husband. As we uphold the lower court in ordering the executor to execute a deed we need not consider Point Two of respondents' cross appeal.
We sustain the trial court in refusing to order LaReta C. Madsen to give a deed. We agree with the trial court that her agreement was only to give a deed to the vendees when payment was completed, and an order now would be premature. Even if in signing the Peterson contract Mrs. Madsen relinquished her statutory dower, yet if the Petersons defaulted in their contract it *351 may be that Mrs. Madsen should never be required to deed the property to them. By signing the Peterson contract she relinquished to them her dower right. It may be a forfeiture of the Peterson contract would not restore her dower, yet in such event she would not be required to do some act which would be contingent upon an act being performed by the Petersons. Until the Petersons have paid the purchase price as called for by the contract Mrs. Madsen cannot be compelled to deed the property to them.
Judgment of the trial court is affirmed. Costs to respondent.
McDONOUGH, J., concurs.
WADE, J., concurs in the result.
WOLFE, Chief Justice (concurring).
I concur but desire to state my reasons why I think Mrs. Madsen is not entitled to any of the proceeds which have been and which will be received from the Peterson contract.
Mr. Richard W. Madsen orally agreed to convey the property in dispute to the respondent corporation in 1937 at which time the latter paid him the purchase price and went into possession. There being part performance of that oral contract, the executor of Mr. Madsen's estate cannot plead the statute of frauds as a bar to the respondent's action. However, Mrs. Madsen was not a party to the oral agreement which her husband made with the respondent nor did she at any time agree, either orally or in writing, to convey the property to the respondent. Not only was she not a party to any agreement with the respondent, but the trial court found in its finding of fact no. 10 that:
"* * * neither at the time of the execution of the Peterson contract on or about June 6, 1946, nor at any time prior thereto did defendant, LaReta C. Madsen, know that Madsonia Realty Company had or claimed any right, title or interest in or to the aforesaid property; that at no time did either Richard W. Madsen, personally, nor *352 did any agent, officer or employee of Madsonia Realty Company, take any step whatsoever to put said LaReta C. Madsen on notice of any claim or interest by the said corporation." (Italics added.)
The only contract which Mrs. Madsen entered into with regard to the property was the Peterson contract, wherein she and her husband agreed to convey the property to the Petersons for $16,500. Mrs. Madsen, however, was not a joint owner of the property. The only interest which she had therein was her inchoate statutory right of dower. The purpose of her joining in the Peterson contract was to relinquish that right. When a wife joins in a contract to sell realty owned entirely by her husband for the purpose of relinquishing her statutory right of dower, she acquires no interest in the proceeds of the sale. In re Brown's Estate, 140 Or. 615, 14 P.2d 1107; In re McBride's Estate, 253 Mich. 305, 235 N.W. 166; Marshall v. Reed, 237 Mich. 336, 211 N.W. 637.
Mrs. Madsen has no interest in the proceeds by virtue of being bequeathed by her husband one-third of his personalty. The balance due upon the Peterson contract at the time of Mr. Madsen's death belongs not to his estate, but to the respondent corporation to whom he sold the property in 1937.
Nor does she have any statutory dower in the proceeds. As has been pointed out, all moneys paid or to be paid by the Petersons under the contract belong to the respondent. But even if the proceeds did belong to the decedent, they are personalty in which the statutes of this state give a widow no dowable interest.
HENRIOD, J., not participating.
CROCKETT, J., having disqualified himself, did not participate.