ROSEVILLE TRUST COMPANY, BY GEORGE M. LaMONTE, COMMISSIONER OF BANKING AND INSURANCE OF THE STATE OF NEW JERSEY, RESPONDENT, v. NATIONAL SURETY COMPANY AND RAYMOND E. SMITH, APPELLANTS.

Argued June 22, 1920—Decided November 15, 1920.

1. When a surety company executes its bond to a trust company as employer to indemnify it against loss arising from the acts of an employe, amounting to larceny or embezzlement, upon condition that if the employer suspects, or if there comes to the notice or knowledge of the employer any act, fact or information tending to indicate that the employe is or may be unreliable, deceitful, dishonest or unworthy of confidence, the employer shall immediately so notify the surety company, and if this is not done the surety shall not be liable for any act of the employe thereafter committed, the surety company will not be liable for any embezzlement by employe, if the employer, a trust company, has information that the employe, its treasurer, has loaned the employer's money to a friend without making any entry thereof on

the books of the company, and has endeavored to conceal it, either by false entries or by omitting to make any record thereof on the books of the company, unless notice be given to the surety company as required by the conditions of the bond, for in such case the employer has knowledge of a fact tending to indicate that the employe is unreliable, deceitful, dishonest and unworthy of confidence. These facts being undisputed no jury question remained and there should have been a direction for the surety company.

2. Upon these undisputed facts it was error to leave to the jury to find what impressions they made on the mind of the employer, or whether it was impressed from them that the treasurer had only used bad judgment, for that could not be inferred from the facts, which clearly showed an unlawful use of the employer's money, concealed by false or omitted entries, all of which tend to indicate deceit and dishonesty and contain no element of bad judgment, except as all wrong-doing may be said to be the exercise of bad judgment, sufficient to excuse the giving of the notice required by the contract.

On appeal from the Supreme Court.

For the respondent, *Roger Hinds* and *Edward F. Clark* (of the New York bar).

For the appellants, *Samuel D. Williams* and *Robert H. McCarter*.

The opinion of the court was delivered by

BERGEN, J. There are two appeals in this case, one by the defendant from a judgment against it on a bond of indemnity to make good and reimburse to the employer, the Roseville Trust Company, all pecuniary loss by or through the personal dishonesty, amounting to larceny or embezzlement, of Raymond E. Smith, as secretary and treasurer of the trust company, occurring between December 1st, 1908, and December 1st, 1909, which might be discovered during that time, or within six months thereafter. The other appeal is by the plaintiff challenging the action of the trial court in limiting the recovery to the amount of the penalty of the bond. As the right of the plaintiff to recover anything depends upon its right to enforce the bond we will first deal with the appeal

of the defendant. The original bond is in the penal sum of $20,000, conditioned to make good all pecuniary loss of money, securities, or other personal property of the plaintiff, "through the personal dishonesty amounting to larceny or embezzlement" of Raymond W. Smith as secretary and treasurer of the Roseville Trust Company. By one of the covenants contained in the bond it was agreed that if the plaintiff, the trust company, "suspect, or if there come to the notice or knowledge of the employer or any officer of the employer, any act, fact or information, tending to indicate that the employe is or may be unreliable, deceitful, dishonest, or unworthy of confidence, the employer shall immediately so notify the company in writing at its principal offices in the city of New York, and if the employer fail or neglect so to do, the company shall not be liable for any act of the employe thereafter committed; and if at any time after the beginning of the term for which this bond is written there came to the notice or knowledge of the employer, or any officer of the employer, the fact that the employe is unreliable, deceitful, dishonest, or unworthy of confidence, the company shall not be liable for any act of the employe thereafter committed." It is admitted that Smith embezzled funds of the trust company to a large extent, and this suit was brought to compel the defendant, National Surety Company, to make good the loss occasioned by such embezzlement. The bond was dated December 7th, 1908, and the first embezzlement, for which recovery is sought, occurred December 12th, 1910. Shortly before the expiration of this bond the National Surety Company executed and delivered to the trust company a writing continuing in force the original bond to the first day of December, 1910, upon condition, *inter alia,* that the employer was aware of no reason why the company could not safely continue its risk on account of said employe. The same thing was done in 1910 and continued the bond, upon the same conditions to December 1st, 1911, and a like writing was executed by the surety company continuing the bond from December 1st, 1911, for one year. In 1912 the surety company by its writing, in consideration of the payment of the annual pre-

mium charge each year, continued in force the original bond, for an indefinite term so as to cover, according to its terms and conditions, any of said acts or defaults by Smith committed after the "date of the execution of the original bond and before its termination as provided therein." The undisputed proof shows that shortly after the trust company was organized its accounts were examined by the direction of the commissioner of banks and insurance of this state and it was found that Smith had loaned to a friend, Nones, on his note, $1,350 without the knowledge of any of the officers of the trust company, Smith transferring the money to Nones by drawing a draft on the New York State Bank of Albany, N. Y., in which the plaintiff had a deposit; that Smith made no entry of this draft, or of the note representing the loan, on the books of the trust company, nor was the correspondent bank credited with the draft until a week later when Smith loaned Nones $1,000 more in cash, and to meet this and the credit then given to the Albany bank, he drew two drafts on the Fourth Street National Bank of Philadelphia, one for $1,350 and the other for $1.000 to make up the credit given to the Albany bank and also the $1,000 additional cash loaned to Nones. Neither of the drafts last mentioned were credited to the Philadelphia bank by Smith on the books of the trust company, but on the contrary they were charged to the Philadelphia bank on the cash book and general ledger. The effect of this was an unlawful loan by Smith to his friend Nones of $2,350 which Smith undertook to conceal by not entering the transaction in the books of the trust company contrary to the provisions of section 171 of our Crimes act which declares that "Any cashier, bookkeeper, or other officer, employe or agent of any such corporation who shall make, or cause to be made, any false entry on any book of account of said corporation, or in any way falsely keep accounts of said corporation, with intent to cheat or defraud said corporation, or any person dealing therewith, shall be guilty of a high misdemeanor." This condition was discovered March 11th, 1909, by an examination made by an agent of the commissioner of banks and insurance of this state who at once

notified the officers of the trust company, and the commissioner of banks and insurance, of these acts of Smith. Thereupon the commissioner of banks and insurance wrote a' letter to the trust company disclosing all these facts, as well as other irregularities not presently pertinent to the matter under consideration, and stated that no confidence could be placed by his department in any official who should be guilty of these acts, and also that Smith should be required to resign and cease his connection with the company. Smith thereupon tendered his resignation to the trust company but the board of directors of that company, with knowledge of all these circumstances, refused, by a unanimous vote, to accept his resignation, and by resolution retained him as treasurer, which action was communicated to the commissioner of banks and insurance by a writing signed by all of the directors with the exception of one who was absent. No reason is given in the communication to the commissioner for the action taken. To this the commissioner replied, July 6th, 1909, acknowledging the receipt of the letter saying, "I will say now, however, that I emphatically disapprove of the decision of the board in the matter." These facts are not disputed, and it is admitted that no notice thereof was given to the surety company. At the close of the case the surety company moved for a direction in its favor on the ground that the admitted acts of Smith tended to show that he was unreliable, deceitful, dishonest and unworthy of confidence, and that under such circumstances the surety company was not liable, by the plain terms of the bond, to make good the embezzlement of Smith after these facts came to the knowledge of the directors of the trust company unless notice thereof was given to the surety company, which admittedly was not done. The trial court refused to direct for the defendant but submitted to the jury the question whether, under the facts, Smith having in 1909 confessed their truth, the directors were right in deciding that it was not a matter which the contract required them to give notice of to the defendant. In our opinion the admitted facts clearly show that Smith was deceitful and not

worthy of confidence, and that although Smith promised not to repeat his offences, that did not absolve the directors from giving notice to the defendant, the surety company, of the situation of which the plaintiff had notice. Any officer of a financial institution who loans its money to his friends, without the authority of the institution, and who, by false entries, or neglect to make proper entries, on the books of his employer, undertakes to conceal his acts from the knowledge of his employer is guilty of an act which, to say the least, renders him unworthy of confidence and when, as in this case, the directors of the trust company withheld from the defendant, the surety company, all knowledge of the acts of their employe, which under the statute above cited, constituted a misdemeanor, and by retaining Smith in its employ, made possible his subsequent defalcation which caused the bankruptcy of the trust company, for which it now seeks to recover from the defendant on its bond of indemnity, it violated the plainly written covenant in the bond above referred to. Smith confessed his wrong doing and tendered his resignation and although the trust company chose to trust him and rely upon his promised reformation, that would not bind the surety company under its obligation, unless it was given notice of the misdemeanors of Smith. We think that under the facts the plaintiff was chargeable with notice that Smith was deceitful and unworthy of confidence, and was so conclusively shown to be so, the facts being admitted, that no jury question remained on that branch of the case, and that it was the duty of the trial court to grant the motion for a direction in favor of the defendant, and for that reason the judgment against the defendant should be reversed. As under the conclusion which we have reached the plaintiff is not entitled to recover anything, it is not necessary to consider the appeal of the plaintiff from the action of the trial court limiting the right of recovery to the penalty of the bond, because the plaintiff, if not entitled to recover at all, is not aggrieved by the action of the trial court. The judgment will be reversed and a *venire de novo* awarded.

MINTURN, J. (dissenting). Were I sitting as a juror in this case, I would be called upon by the issue raised to determine whether or not there was sufficient evidence before the directors of the bank, at the time mentioned, to require them, under the terms of the policy of indemnity, to call the attention of the surety company to the situation. I would as a juror be called upon to consider the *bona fides* of the minds of the directors in considering the situation thus presented. That was the issue presented by the pleadings and the testimony, and the trial court properly left that question to the jury.

The inquiry before us, a court of review, is solely whether the learned trial court committed legal error in leaving that issue to the jury. To maintain the affirmative of this proposition, it must be held that only one view could be entertained by the directors at the time they were considering the facts before them. This may be so in the light of present circumstances, as presented by the record, but the inquiry properly before the trial court, and which the court submitted to the jury, was whether at the time the directors were considering the transactions of Smith, one construction only could be placed upon the situation. We declare in legal effect that we differ from the verdict reached by the jury upon the facts, as we now see them, whereas the only legal inquiry before us is whether a motion to nonsuit and a motion to direct a verdict should have been granted.

The learned trial court properly dealt with this issue by submitting it to the jury, which while the verdict may not accord with our views, in the light of the present situation, the constitutional right of the jury to determine the facts cannot be abrogated.

We have said in *Schmidt* v. *Marconi Co.*, 86 *N. J. L.* 783, that "In every case where the issue depends upon the determination of facts, the existence of which is not admitted, the jury, and not the court, must determine them." Such, of course, is the fundamental legal rule.

If the case were before us upon a rule to show cause a

different question would arise. But the verdict of the jury upon an issue of fact cannot be attacked upon this appeal, which in practice at least, is legally circumscribed with all the limitations incident to a writ of error.

These views lead me to vote to affirm the judgment.

*For affirmance*—MINTURN, J. 1.

*For reversal*—THE CHIEF JUSTICE, SWAYZE, TRENCHARD, BERGEN, KALISCH, BLACK, KATZENBACH, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, ACKERSON, JJ. 12.