FEDERAL DEPOSIT INSURANCE COR-
PORATION, as receiver of the State
Bank of Prairie City, Prairie City, Iowa,
Appellee,

v.

NATIONAL SURETY CORPORATION,
Appellant.

No. 59230.

Supreme Court of Iowa.

July 25, 1979.

Rehearing Denied Aug. 24, 1979.

Donald A. Wine of Thoma, Schoenthal, Davis, Hockenberg & Wine, Des Moines, for appellant.

John N. Diehl and Ben C. Clayton of Knopf, Diehl, Clayton & Cleverley, Newton, for appellee.

Considered by LeGRAND, P. J., and UHLENHOPP, HARRIS, McGIVERIN and LARSON, JJ.

LeGRAND, Justice.

The question on this appeal is whether National Surety Corporation is liable under a fidelity bond issued to State Bank of Prairie City for losses allegedly resulting from the dishonest and fraudulent acts of a bank officer. The trial court found for plaintiff and defendant appeals. We affirm the judgment.

This action was brought by Federal Deposit Insurance Corporation as receiver after the State Bank of Prairie City was closed by banking authorities on February 20, 1970. An audit conducted by the receiver disclosed a number of allegedly fraudulent and dishonest acts by Harry Soults, the president, which partially explained the bank's financial problems.

Defendant raises several issues on this appeal. The first is procedural and challenges the refusal of the trial court to allow a jury trial. The other issues are:

(1) That plaintiff failed to establish the transactions complained of were dishonest, criminal, or fraudulent.

(2) That coverage under the bond terminated prior to the acts complained of because the bank had actual prior knowledge of Soults' misconduct and failed to give defendant notice thereof; and that plaintiff receiver cannot recover if the bank itself could not do so.

(3) That the person accused of having committed fraudulent acts was not an employee of the bank within the meaning of the bond.

(4) That the bank should be charged with knowledge of Soults' misconduct under the "sole actor" doctrine.

We consider first the claim that defendant was entitled to a jury trial. This is an action of law triable to a jury if a timely jury demand was made under rule 177, Iowa Rules of Civil Procedure. Otherwise a jury trial was waived. Defendant argues the jury demand filed while this case was pending in federal court constitutes a jury demand in state court as well. Plaintiff takes an opposite view, and we must resolve their differences.

This action was first filed in state court. On defendant's application, it was removed to United States District Court, where defendant filed its answer accompanied by demand for jury trial. Later the case was remanded back to state court when the federal court declined to take jurisdiction.

The remand was in August of 1972. In February of 1973, defendant filed its answer in state court. It did not either then or later file a demand for jury trial. The only jury demand ever filed was the one in federal court, a copy of which the federal magistrate mailed to the Jasper County clerk in May of 1973.

The trial court ruled there was no jury demand filed under rule 177. It also declined to order a jury trial under subsection (d) of that rule, which allows the trial court to do so for good cause even if no demand has been filed. The trial court held defendant had not shown good cause.

The question to be answered is the effect which a jury demand made in federal court has upon a case remanded back to state court for trial.

Defendant argues that the demand made in federal court becomes a demand as well in state court upon remand. Defendant cites no authority for this view. The general rule is that in such circumstances the case reverts to the same status it had when the petition for removal was filed. *Allen v. Hatchett,* 91 Ga.App. 571, 86 S.E.2d 662, 665 (1955); 76 C.J.S. *Removal of Causes* § 312 (1952); 32 Am.Jur.2d, *Federal Practice and Procedure,* §§ 534, 535 (1967). It has been held that answers filed in federal court did not constitute answers in the state court suit after remand. *Trinity Universal Insurance Co. v. Robinson,* 227 Ark. 482, 299 S.W.2d 833, 836 (1957). *Cf. Pickford v. Kravetz,* 206 Misc. 539, 133 N.Y.S.2d 377, 378–79 (1954) (service obtained in federal court of no effect in state court after remand). *But see Citizens National Bank of Grant County v. First National Bank of Marion,* 331 N.E.2d 471, 476 (Ind.App.1975) (motions to dismiss filed in federal court properly ruled on by state court after remand without refiling).

Defendant's argument loses much of its appeal when we consider a separate answer was filed after remand. If defendant felt it necessary to file a new answer, it seems it would also find it necessary to file a new jury demand. We believe a jury demand filed in federal court is just that and nothing more. It does not constitute a demand for jury trial in state court. Nor do we believe, as defendant claims, that the court abused its discretion in not allowing a jury trial under rule 177(d). Defendant argues plaintiff was neither prejudiced nor surprised by the late jury demand. The trial court found failure to request a jury trial was due to inadvertence and mistake, which it held was not good cause. This is a matter in which the trial court has broad discretion. We find no abuse of that discretion. *See Schupbach v. Schuknecht,* 204 N.W.2d 918, 919–20 (Iowa 1973); *Beneficial Finance Co. of Waterloo v. Lamos,* 179 N.W.2d 573, 576–77 (Iowa 1970).

We consider next the question whether or not the acts which led to the bank's loss were caused by dishonest or fraudulent acts by a bank employee. Defendant claims they were nothing more than errors in judgment. The former are covered by the bond, the latter are not.

A description of the conduct giving rise to this claim should now be made. Harry

Soults, president of the bank, was also a substantial stockholder and without question the most influential person in the management of the bank's business. He was also "liberal" in making loans.

For some time he had extended credit beyond the bank's $25,000.00 limit, particularly to accommodate several favored customers. This practice (and others) had been criticized by bank examiners on several occasions, and Soults had apparently stopped making such loans. On the occasion of the last examination, before closing, the bank examiners had commended the bank on the improvement shown.

However, a separate audit by FDIC revealed that, instead of being stopped, the practice had spread and resulted in the bank's closing.

The most serious disclosures made by this audit were the making of excess loans without sufficient security; juggling the bank's books to conceal the loans and to show false participation with correspondent banks; unauthorized and illegal transfer of various amounts from escrow accounts to conceal the excess loans already referred to; and other miscellaneous fraudulent or unacceptable bank practices.

The total excess loans and wrongful withdrawals resulted in a net loss of the bank of $914,935.66, the amount for which judgment was entered after trial to the court.

The trial court found that the actions of Harry Soults in making excess loans and then juggling bank records were dishonest and illegal acts. It held National Surety Corporation liable for the entire amount of the loss under a liability bond which covered "any loss through any dishonest, fraudulent, or criminal act of any of the employees [of the bank]".

■ The terms "dishonest" and "fraudulent" as used in fidelity bonds have a broad meaning. They include acts which show a "want of integrity" or "breach of trust". See *Arlington Trust Co. v. Hawkeye Security Insurance Co.*, 301 F.Supp. 854, 857–58 (E.D.Va.1969). They also include acts in disregard of an employer's interest, which

are likely to subject the employer to loss. *First National Bank of Sikeston v. Trans America Insurance Co.*, 514 F.2d 981, 987 (8th Cir. 1975). The fact that one knowingly makes unauthorized loans in excess of authority has been called "such a breach of trust as will constitute fraud or dishonesty within the meaning of the law". *Miami National Bank v. Pennsylvania Insurance Co.*, 314 F.Supp. 858, 863 (S.D.Fla.1970).

■ In the present case there is substantial evidence to sustain the finding of the trial court that Soults was guilty of fraudulent and dishonest acts. This conduct included transferring funds from one account to another without authorization, making false records, false reconciliation of accounts with other banks, crediting checks to improper accounts, false reconstruction of checking accounts, and holding overdrafts as cash items. We find there is ample support for the trial court's finding that these acts have violated the terms of § 528.3, The Code, 1966, and § 524.705, The Code, 1971. *See Community Savings Bank v. Western Surety Co.*, 232 Iowa 1381, 1385, 8 N.W.2d 427, 429 (1943). (The terms of these statutes are conditions of the bonds by virtue of law.)

■ Defendant argues there can be no liability under the bond because of the bank's failure to give notice of the fraudulent acts, which it was obligated to do by the terms of the bond. Defendant insists this condition of the bond was ignored even though the improper conduct was known to the bank. It asserts it was exposed to greater liability by the bank's failure to alert it and that it is not liable for the loss. The evidence does not support this argument, even though it is quite true an earlier bank examination disclosed certain loans made in excess of its authority. These were called to the attention of the board of directors, but the board had reason to believe the practice had been discontinued. This is borne out by the bank examiner's report less than a year before the date of closing in which the condition of the bank was described as "considerably improved." The trial court found that during this time

most of Soults' improper conduct was concealed from the directors and from the examiners as well. The bank examiners had knowledge only of the three original excess loans, which the trial court found was immaterial because these loans standing alone did not amount to dishonest or fraudulent acts. We hold there is substantial support for this finding and it is binding upon us under rule 14(f)(1), Iowa R.App.P.

■ In considering the question of notice under the terms of the bond, we must decide if a reasonable person should have perceived, from what was then known, that Soults' conduct was dishonest. *See Maryland Casualty Co. v. Clements*, 15 Ariz.App. 216, 487 P.2d 437, 441–42 (1971). Support for this view is found also in *Federal Deposit Corp. v. Lott*, 460 F.2d 82, 87 (5th Cir. 1972). In that case the court said:

> In applying the test we must bear in mind what type information the directors must have had in order to nullify Aetna's liability under the bonds. The fact that the directors may have had knowledge of irregularities and violations, i. e., the holding of excessive cash items and exceeding the legal loan limit, is not by itself sufficient to trigger the bank's obligation to notify Aetna. We recently had occasion to point out that:
>
>> "The well established rule is that the Insured under a blanket employee's fidelity bond is not bound to give notice 'until he [has] acquired knowledge of some specific fraudulent or dishonest act which might involve the [Insurer] in liability for the misconduct.' Notice is not required when the obligee merely suspects or has reason to suspect wrongdoing."
>
> *American Surety Company v. Pauly*, 170 U.S. 133, 144, 18 S.Ct. 552, 42 L.Ed. 977 (1898).

That same language is applicable here. Although the directors had knowledge that excess loans had been made, they were nevertheless justified in believing these loans had been repaid and that the making of such loans would not be repeated. It was only after the bank had been closed that the extent of the fraudulent and dishonest practices became apparent.

Defendant relies upon a line of cases denying recovery under bonds similar to the one here for failure to give notice of dishonest or fraudulent practices. These include *C. Douglas Wilson & Co. v. Insurance Company of North America*, 590 F.2d 1275, 1278 (4th Cir. 1979) (false certification of loan pay outs which were known to the insured but were not reported to the bonding company); *Alfalfa Electric Co-op, Inc. v. Travelers Indemnity Co.*, 376 F.Supp. 901, 904–08 (W.D.Okl.1973) (illegal loans negotiated at the direction of the board of directors); *Farmers and Merchants State Bank of Pierz v. St. Paul Fire & Marine Insurance Co.*, 309 Minn. 14, 242 N.W.2d 840, 843 (1976) (questionable conduct known to and appreciated by the board of directors from the beginning); *Roseville Trust Co. v. National Surety Co.*, 95 N.J.L. 138, 112 A. 337, 338–39 (1920) (where the commissioner of banks had recommended that an employee be discharged for a series of dishonest acts and the company had refused to do so).

We believe all of these cases are distinguishable from the present one on the facts. In each of them, the employer had actual knowledge of the improper conduct and knew, or should have known, that it constituted a violation of the provisions of the bond not to give notice to the bonding company. We have already indicated there was no such circumstance here.

In the *St. Paul Fire & Marine* case, 242 N.W.2d at 843, the Minnesota Supreme Court stated that "a bankers fidelity bond does not cover losses suffered by reason of fraud, dishonesty, or breach of fiduciary duty when a bank, through its board of directors, had knowledge of the acts complained of, *appreciated their fraudulent nature, and condoned, acquiesced, or participated in them.*" *See also* cases in footnote 4 at 843.

■ The defendant also relies upon the "sole actor" doctrine to avoid liability. Under this theory, if one is in complete control of the principal, the knowledge of that per-

son becomes the knowledge of the principal, even though he is engaged in a fraudulent act. In other words, if Soults here was in sole control of the bank so that his acts became the acts of the bank, then the bank cannot claim ignorance of the nature or effect of his fraudulent conduct. *See Nissen v. Nissen Trampoline Co.*, 241 Iowa 474, 481–83, 39 N.W.2d 92, 97 (1950). This claim was made in *Lott* and rejected by the court there, 460 F.2d at 82, even though Lott was the controlling shareholder and the officer who dictated the policy of the bank.

There is no basis here for holding that the board of directors of the bank abdicated its responsibility to Soults or that it was entirely subject to his control. *General Finance Corp. v. Fidelity & Casualty Co. of New York*, 439 F.2d 981, 984 (8th Cir. 1971); *Phoenix Savings & Loan, Inc. v. Aetna Casualty Insurance Co.*, 427 F.2d 862, 872 (4th Cir. 1970); *United States Fidelity & Guarantee Co. v. Oklahoma ex rel. Sebring*, 383 F.2d 417, 419 (10th Cir. 1967).

We hold the sole actor theory is not applicable under the facts of this case.

Whether specifically discussed or not, we have considered each of the issues raised by defendant and find them to be without merit. We find no reversible error in the judgment entered by the trial court and it is therefore affirmed.

AFFIRMED.