GENERAL ELECTRIC CREDIT CORPORATION v WOLVERINE
INSURANCE COMPANY

Docket No. 54213. Submitted March 17, 1982, at Detroit.—Decided
October 6, 1982. Leave to appeal applied for.

Number One Mobile Homes, Inc., was a licensed mobile home
dealer. Wolverine Insurance Company was Number One's $10,-
000 statutory surety and furnished Number One with renewal
certificates each year as required by law. General Electric
Credit Corporation, as Number One's floor plan financer, had a
security interest in all of Number One's inventory and equip-
ment. The security agreement provided that, upon sale of any
inventory item, Number One would be required to repay to
G. E. Credit the amount due on that particular item and that,
until such repayment was made, Number One would hold all
proceeds of sale in trust for G. E. Credit's benefit. G. E. Credit
brought an action against Number One, Wolverine Insurance,
Robert E. Sivyer and Marlene J. Sivyer in the Wayne Circuit
Court, alleging *inter alia* that Number One and the Sivyers
sold mobile homes "out of trust", that is, they sold inventory to
third persons and failed to remit the proceeds to plaintiff as
required by the security agreement. Plaintiff alleged that the
sales out of trust constituted "fraudulent and wrongful conver-
sion and defalcation of the plaintiff's money". Plaintiff alleged
that Wolverine was liable on the bond for the amounts fraudu-
lently and wrongfully converted by Number One's sales out of
trust, *i.e.,* $26,086.01. A hearing established the amount of
liability as to Number One and the Sivyers and the court,
Charles Kaufman, J., granted summary judgment on these
allegations, based on a theory of either actual or constructive
fraud and holding Wolverine liable for $20,000 plus interest
and costs. Wolverine appealed. *Held:*

    1. It does not matter whether the acts upon which Wolve-

References for Points in Headnotes
[1] 17 Am Jur 2d, Contracts § 276.
  74 Am Jur 2d, Suretyship § 26.
[2] 35 Am Jur 2d, Fidelity Bonds and Insurance § 23.
[3, 4] 51 Am Jur 2d, Licenses and Permits §§ 48, 140.
[4] 35 Am Jur 2d, Fidelity Bonds and Insurance § 31.
  51 Am Jur 2d, Licenses and Permits § 138.

rine's liability rests constitute actual or constructive fraud. The statutory bond protects against loss due to "fraud, cheating, or misrepresentation". The statutory bond required as a prerequisite to obtaining a mobile home dealer's license is intended in part to protect inventory financers from a wrongful withholding or misapplication of proceeds by a licensed vehicle dealer. Summary judgment for plaintiff was proper.

2. The court correctly entered judgment for $20,000 plus interest and costs. Sales out of trust in excess of $10,000 occurred in two different years. A mobile home dealer is required to make application for a new license annually and each application must be accompanied by either a bond or renewal certificate. If a renewal certificate is used, the bond shall be considered as renewed for each succeeding year in the same amount and with the same effect as an original bond. This statutory provision must be deemed included in every dealer's bond and renewal certificate and is controlling over any term or condition of either to the contrary.

Affirmed.

1. SURETYSHIP AND GUARANTEE — JUDICIAL CONSTRUCTION — SURETY FOR HIRE.

The contract of a surety for hire should be construed most strongly against the surety and in favor of the indemnity which the obligee has reasonable grounds to expect.

2. SURETYSHIP AND GUARANTEE — JUDICIAL CONSTRUCTION.

The words "fraud" and "dishonesty" in fidelity bonds insuring employers against fraudulent or dishonest acts by their employees should be given broad meaning extending beyond criminal acts to include acts which show a want of integrity or breach of trust; they should not extend to acts amounting to mere irregularity, mistake, or error in judgment.

3. SURETYSHIP AND GUARANTEE — LICENSES — FLOOR PLANNERS.

The statutory bond required as a prerequisite to obtaining a mobile home dealer's license is intended in part to protect inventory financers from a wrongful withholding or misapplication of proceeds by a licensed vehicle dealer (MCL 257.248[7]; MSA 9.1948[7]).

4. SURETYSHIP AND GUARANTEE — LICENSES — MOBILE HOME DEALERS.

A mobile home dealer is required to make application for a new license annually and each application must be accompanied by either a bond or renewal certificate; if a renewal certificate is

used, the bond shall be considered as renewed for each succeeding year in the same amount and with the same effect as an original bond; this statutory provision must be deemed included in every dealer's bond and renewal certificate and is controlling over any term or condition of either to the contrary (MCL 257.248; MSA 19.1948).

*Louis P. Labbe,* for plaintiff.

*Jenkins, Nystrom & Sterlacci, P.C.* (by *Jeannette A. Paskin),* for defendant Wolverine Insurance Company.

Before: CYNAR, P.J., and BRONSON and J. R. ERNST,* JJ.

PER CURIAM. Defendant Wolverine Insurance Company (Wolverine) appeals of right from a summary judgment entered in favor of plaintiff, General Electric Credit Corporation, holding Wolverine liable under the terms of certain surety bonds.

In November, 1976, plaintiff and Number One Mobile Homes, Inc. (Number One), entered into a floor plan arrangement for the purpose of financing Number One's inventory. Pursuant to this agreement, plaintiff advanced loans to Number One for the purchase of mobile homes as inventory. Number One in turn executed a security agreement which provided plaintiff with a security interest in all of Number One's inventory and equipment. The security agreement further provided that upon sale of any inventory item Number One would be required to repay to plaintiff the amount due on that particular item. The security agreement also provided that, until such repayment was made, Number One would hold all proceeds of sale in trust for plaintiff's benefit.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Number One was required to be licensed as a person carrying on or conducting the business of buying, selling, brokering, or dealing in vehicles of a type required to be registered under the Michigan Vehicle Code. MCL 257.248(1); MSA 9.1948(1), formerly MCL 257.248(a); MSA 9.1948(a). This license expired on the last day of the month in the quarter for the business year in which the license was issued, and was renewable upon application and payment of a new fee. MCL 257.248(4); MSA 9.1948(4), formerly MCL 257.248(d); MSA 9.1948(d).

As a prerequisite to obtaining a mobile home dealer's license, Number One was required to submit with its application a properly executed surety bond or renewal certificate, pursuant to MCL 257.248(7); MSA 9.1948(7), formerly MCL 257.248(g); MSA 9.1948(g). On December 6, 1976, Number One obtained such a bond from Wolverine. Premiums for renewal of the bond and dealer's license were paid annually.

Subsequently, Number One sold vehicles from inventory to third persons but failed to remit the proceeds to plaintiff as required by the security agreement.

On May 29, 1979, plaintiff filed this action against Number One, individual defendants Robert E. Sivyer and Marlene J. Sivyer, and Wolverine. (The present appeal does not include the disposition of Counts I and II of said action against Number One and the Sivyers, respectively.)

Count III alleged that Number One and the Sivyers sold mobile homes "out of trust", that is, they sold inventory to third persons and failed to remit the proceeds to plaintiff as required by the security agreement. Count III alleged that the sales out of trust constituted "fraudulent and wrongful conversion and defalcation of the plain-

tiff's money". Plaintiff alleged that the amount due from sales out of trust was $26,086.01.

Count IV was against Wolverine. It alleged that Wolverine was liable on the bond for the amounts fraudulently and wrongfully converted by Number One's sales out of trust, *i.e.,* $26,086.01.

At a hearing held on March 14, 1980, the amount of liability as to Number One and Robert Sivyer was established. The question of whether the sales out of trust constituted fraudulent conduct so as to impose liability on Wolverine was held in abeyance.

Plaintiff filed a motion for summary judgment as to Counts III and IV. The matter was heard on September 26, 1980, and summary judgment for plaintiff on these counts was entered on that date. Wolverine was represented at this hearing as well as at the previous hearing on March 14, 1980.

The trial court's order granting summary judgment in favor of plaintiff on Counts III and IV stated in pertinent part:

"Ordered and adjudged that plaintiff's motion for summary judgment be, and it is hereby granted as follows:

"1. Under Count III of complaint in favor of plaintiff and against Number One Mobile Homes, Inc., a Michigan Corporation, and Robert E. Sivyer, jointly and severally, on account of fraudulent and wrongful conversion fraud, cheating or misrepresentation * * *."

Plaintiff relied in the trial court on a theory of constructive fraud. The transcripts reveal that the court did not make a specific factual finding as to whether constructive fraud or actual fraud was present. Wolverine, on appeal, has not raised objection to entry of summary judgment on plaintiff's theory of "constructive fraud".

The trial court determined that Wolverine was liable under the bond. It also held that coverage under the bond was cumulative, *i.e.,* Wolverine was liable for up to the face amount of the bond for each year in which the bond was in effect and in which Number One made out-of-trust sales. Since Number One made sales out of trust in amounts exceeding $10,000 in both 1977 and 1978, and since the bond was in effect during each of those years, the trial court found Wolverine to be liable for $20,000, plus interest and costs.

We first address Wolverine's contention on appeal that a statutory vehicle dealer's indemnity bond does not obligate the surety to reimburse or indemnify losses occasioned by "constructive fraud" perpetrated by the principal.

The Legislature, in establishing a requirement that an applicant for a vehicle dealer's license accompany such application with an indemnity bond, declared a "purchaser, seller, *financing agency,* or governmental agency" to be within the classes protected by such bond. MCL 257.248(7); MSA 9.1948(7), emphasis added. Plaintiff, as financing agency for Number One's inventory, is within the protected class. The statute goes on to provide:

"The surety shall be required to make indemnification or reimbursement for a monetary loss only after judgment based on fraud, cheating, or misrepresentation has been entered in a court of record against the licensee." MCL 257.248(7); MSA 9.1948(7).

The real issue to be decided is whether the summary judgment entered by the trial court constitutes a finding that Number One's conduct constituted "fraud, cheating, or misrepresentation" within the provisions of the statutory bond. This

question must be considered in light of the express legislative purpose of protecting third parties. Where, as here, a surety for hire gives a bond to afford protection to the general public, if its terms so permit, the bond should be construed so as to accomplish that purpose. *Detroit v Blue Ribbon Auto Drivers' Ass'n,* 254 Mich 263; 237 NW 61 (1931).

Wolverine submits that constructive fraud has been defined as a "breach of legal or equitable duty which, irrespective of the moral guilt of the fraud feasor, the law declares fraudulent because of its tendency to deceive others", while actual fraud was defined as "intentional fraud" consisting of "deception, intentionally practiced to induce another to part with property or to surrender some legal right, and which accomplishes the end desired", citing *Goodrich v Waller,* 314 Mich 456, 461-462; 22 NW2d 862 (1946). Premised on this distinction, Wolverine argues that the terms "fraud, cheating, or misrepresentation", as used in the statute and statutory surety bond, are all intentional acts, and that a finding of constructive fraud does not entitle plaintiff to recover under the instant surety bond. We disagree.

"Thus, the courts very generally recognize that the rule of strictissimi juris which prevails with respect to the construction of an uncompensated surety's contract, and under which all doubts and technicalities will be resolved in his favor, has no application in the case of surety companies or compensated sureties. The contract of a surety company, acting for compensation, and of any other surety for hire, is construed most strongly against the surety and in favor of the indemnity which the obligee has reasonable grounds to expect.

"The contract of a compensated surety is generally regarded as in the nature of an insurance contract, and by analogy is governed by the rules applicable to insur-

ance contracts." 74 Am Jur 2d, Suretyship, § 256, p 169 (footnotes omitted).

See also *Detroit v Blue Ribbon Auto Drivers' Ass'n, supra.*

The rule is well settled that if a fidelity bond is susceptible of two constructions, one favorable to the insured and one favorable to the insurer, that construction will be adopted which favors the liability of the insurer for the act or default in question. See 98 ALR 1264; 77 ALR 861; 62 ALR 411; 46 ALR 976; 43 ALR 977.

"Fraud * * * in its general sense, is deemed to comprise anything calculated to deceive, including all acts, omissions, and concealments involving a breach of legal or equitable duty, trust, or confidence justly reposed, resulting in damage to another, or by which an undue and unconscientious advantage is taken of another." 37 Am Jur 2d, Fraud and Deceit, § 1, p 19 (footnotes omitted).

"Fraud may be established not only by spoken or written words, but by conduct covering almost the full range of human experiences. Thus, fraud may consist of a misrepresentation (that is, the positive assertion of a falsehood), the creation of a false impression by words or acts, any trick or device, a concealment or suppression of the truth, or a suggestion of falsehood and a suppression of truth together. It may be perpetrated by silence where there is a duty to speak, by half-truths calculated to mislead, or under certain circumstances, by reckless statements made without knowing or caring whether they are true or not." 37 Am Jur 2d, Fraud and Deceit, § 20, pp 45-46 (footnotes omitted).

Those cases dealing with fidelity bonds insuring employers against fraudulent or dishonest acts by their employees have generally held that the words "fraud" and "dishonesty" in fidelity bonds should be given broad meaning extending beyond

criminal acts; they include acts which show a "want of integrity" or "breach of trust". On the other hand, acts amounting to mere irregularity, mistake, or error of judgment are excluded. It is not necessary that a party covered by a fidelity bond personally profit by his acts for coverage to attach. *Federal Deposit Ins Corp v Aetna Casualty & Surety Co,* 426 F2d 729 (CA 5, 1970); *Irvin Jacobs & Co v Fidelity & Deposit Co of Maryland,* 202 F2d 794; 37 ALR2d 889 (CA 7, 1953); *Brandon v Holman,* 41 F2d 586 (CA 4, 1930); *Federal Deposit Ins Corp v National Surety Corp,* 281 NW2d 816 (Iowa, 1979).

In *Powers v Secretary of State,* 312 Mich 315; 20 NW2d 203 (1945), the Supreme Court reviewed the revocation of the plaintiff's vehicle dealer license for failure to remit sales tax to the state as required by law. The controlling statute expressly empowered the Secretary of State to refuse a license if, upon a hearing, he found the applicant "has been guilty of a fraudulent act in connection with selling or otherwise dealing in motor vehicles". *Powers,* p 319. The Court held:

"This is a broad provision inclusive of intentionally withholding payment of proper sales tax. Under the evidence the amount owing by Powers Motor Sales, Inc., constituted a flagrant violation of the sales tax act and constituted fraud within the meaning of Act No. 46, Pub. Acts 1921, as amended." *Powers,* p 319 (footnote omitted).

See also *Stone v Indemnity Ins Co of North America,* 267 Mich 580, 583-584; 255 NW 312 (1934), where the Court stated:

"We cannot conceive of any practice tending more toward defrauding the public than the admitted conduct of the broker in this case. The misappropriation by

the broker of funds which came into his hands under the express duty of applying them to the purchase of other securities for plaintiff was a direct violation of the statute, and constitutes one of the acts against which the bond was intended to furnish protection."

Plaintiff's district manager of residential financing testified that the claims in Counts III and IV were based on the sales out of trust of four units. According to his testimony, plaintiff discovered the sales out of trust during an on-site inspection. At that time, defendant Sivyer verified that the units had, in fact, been sold. Numerous attempts were made to collect the balance due on the four units. Number One apparently gave plaintiff postdated checks which were subsequently returned for non-sufficient funds. Plaintiff did get some monies through defendant Sivyer's attorney to be applied against the units, but a balance remained of $26,086.01.

The Uniform Commercial Code, as adopted by the Michigan Legislature, provides in pertinent part:

"Sec. 9306. (1) 'Proceeds' includes whatever is received upon the sale, exchange, collection or other disposition of collateral, or proceeds. Insurance payable by reason of loss or damage to the collateral is proceeds, except to the extent that it is payable to a person other than a party to the security agreement. Money, checks, deposit accounts, and the like are 'cash proceeds'. All other proceeds are 'noncash proceeds'.

"(2) Except where this article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor." MCL 440.9306, subds (1) and (2); MSA 19.9306, subds (1) and (2).

The security agreement between plaintiff and Number One vested in plaintiff "a security interest in all inventory, new and used, presently owned and hereafter acquired, *together with all proceeds of the sale or other disposition thereof*", and further provided that "[t]o the extent that undersigned may become obligated to repay any advance to you upon the sale of any unit of inventory by it, undersigned agrees that it will hold all proceeds of the sale of such unit in trust for you". (Emphasis added.)

We conclude that the statutory bond is intended, in part, to protect inventory financers from a wrongful withholding or misapplication of "proceeds" by a licensed vehicle dealer. Accordingly, summary judgment in favor of plaintiff and against Wolverine was properly entered, predicated on the summary judgment against Number One on the theory of constructive fraud and the facts in support thereof.

Next we address Wolverine's contention that its liability under the statutory vehicle dealer's surety bond, which expressly states, "Provided further, that the aggregate liability of the surety for all such judgments shall, in no event, exceed the sum of the bond", shall be limited to the amount stated on the bond, *i.e.,* $10,000.

*Michigan Mortgage-Investment Corp v American Employers' Ins Co of Boston,* 244 Mich 72; 221 NW 140 (1928), is cited by Wolverine as holding that aggregate liability under a bond, first issued for a period of one year and thereafter extended by the issue of continuation certificates in successive years, is limited to the maximum liability first stated in the initial bond. The Court there observed:

"But, assuming that by the issue of the continuation

certificate a new contract was entered into, extending the indemnity provided for in the old one, the liability under that first issued was limited by the provision therefor in the continuation certificate. It is therein expressly provided that the 'aggregate liability' from the effective date of the bond—'shall not exceed the greatest amount for which the company shall have specifically guaranteed such employee since the effective date of said bond' * * *." *Michigan Mortgage-Investment Corp, supra,* p 74.

The dissenting opinion succinctly points out the majority decision's illogical distinction between an original bond and a contract of renewal:

"[I]f there are two contracts each agreeing to indemnify for loss during the period covered by it up to a certain sum, and a loss occurs during both periods, I see no impediment in a recovery on both contracts up to the limit fixed in each. If this is not the rule, then plaintiff received no consideration for the premiums paid on the second or renewal policy, and the only way employers may be protected by this character of insurance will be to take a new policy in a different company each year. If there had been two original policies issued by defendant to plaintiff covering different periods, each containing the language limiting recovery quoted by my Brother, I do not think we would hesitate in holding that such limitation was a limitation on the amount recoverable under each of the policies for loss during the period covered. I do not believe we would extend the limiting languages to losses arising under the other policy." *Michigan Mortgage-Investment Corp, supra,* pp 75-76.

Wolverine also cites *United States Fidelity & Guaranty Co v Barber,* 70 F2d 220 (CA 6, 1934). Although following the rule of *Michigan Mortgage-Investment Corp, supra,* we note that the court, at p 226, observed that "the modern tendency seems to incline toward the multiple contract theory"

and "[t]he remedy for this situation, however, lies with the fidelity companies or with the Legislatures, and not with the courts". See also Anno: *Extent of liability on fidelity bond renewed from year to year,* 7 ALR2d 946.

However, the rule of *Michigan Mortgage-Investment Corp, supra,* is not controlling in the present case. Here the bond is required by statute.

" 'It is a general rule that existing law becomes part of a statutory bond, *i.e.,* one commanded or provided by statute, so that omitted conditions required by the law are read into the bond, and conditions not so required, which limit or restrict liability, are read out of it as surplusage. The rule governs not only the bonds of public officials but others. * * * It applies to depository bonds given to secure public funds. * * *

" 'It is not every provision of the bond not found in the statute which is void. * * * It is only those provisions which have the effect of limiting or restricting the liability imposed by statute which are surplusage'." *Comm'r of Ins v Central West Casualty Co,* 301 Mich 427, 433-434; 3 NW2d 830 (1942), quoting *Lawrence v American Surety Co of New York,* 263 Mich 586, 597-598; 249 NW 3 (1933).

A vehicle dealer is required to make application for a new license annually. Each application must be accompanied by either a bond or renewal certificate. MCL 257.248(7); MSA 9.1948(7) provides:

"If a renewal certificate is used, the bond shall be considered as renewed for each succeeding year *in the same amount and with the same effect as an original bond."* (Emphasis added.)

This statutory provision must be deemed included in every vehicle dealer's bond and renewal certificate and is controlling over any term or condition of either to the contrary.

Therefore, the trial court properly considered Wolverine to have issued an "original bond" for each of the years during which plaintiff sustained losses and that each bond provided coverage for losses incurred during the term of such bond in the aggregate amount of $10,000.

In view of the foregoing, consideration of the remaining issues raised by Wolverine on appeal is unnecessary.

The judgment of the trial court is affirmed with costs to plaintiff.